MARTHA F. RIDGE, ADMX., v. CITY OF HIGH POINT AND THE TATE FURNITURE COMPANY.

(Filed 13 November, 1918.)

1. **Negligence — Master and Servant — Joint Tort Feasors — Evidence—Instructions—Cities and Towns—Ordinances—Implied Notice.**

   Where the evidence tends to show that the plaintiff's intestate was killed in the performance of his duties as conductor on a train, by being struck by lumber, piled at a street crossing close to the track by a furniture company, in violation of a city ordinance, in an action against the lumber company and the city: *Held*, sufficient to establish the liability of both defendants as joint tort feasors; and the court having properly instructed the jury upon the questions of proximate cause and primary and secondary liability as between the defendants, their verdict is sustained on appeal.

2. **Negligence—City Ordinances, Violation—Proximate Cause.**

   The violation of a city ordinance which produces an injury, while negligence *per se*, may only become actionable when the proximate cause thereof.

3. **Negligence—Contributory Negligence—Evidence—Questions for Jury.**

   Where there is evidence tending to show that the plaintiff's intestate, a conductor on a freight train, was killed through the joint negligence of a furniture company and an incorporated town, by being struck by a pile of lumber left too near the track, while he was attending to his duties, at dark, standing on the step of the car; that he had remarked the day before upon the lumber being dangerously near the track, though the motor car had passed the place safely just before he was killed, and that he did not avail himself of a safe place, reached by ladders, on the top of the car, provided for him to perform the character of work he was engaged in when killed: *Held*, that the credibility of witnesses and other matters were for the jury to determine, upon the question whether he acted under the circumstances as a man of ordinary prudence would have done; and his alleged contributory negligence in not availing himself of a safe place provided by his employer was not, under the particular circumstances shown, one of law to be decided by the court.

ACTION, tried before *Adams, J.,* and a jury, at March Term, 1918, of GUILFORD.

Plaintiff seeks to recover damages for the death of her husband, Albert L. Ridge, which she alleges was caused by the negligence of the two defendants. There was another defendant, the N. C. Public Service Company, but a nonsuit was entered as to it.

The allegation of negligence is that the Tate Furniture Company piled lumber in Perry Street so near the track of the railroad company as to make it dangerous to passing cars and those operating them, and that this was also forbidden by an ordinance of the city of High Point, and that its codefendant permitted the lumber to be so piled, whereas it was required by its charter to keep its streets clear of obstructions and to see that they were properly lighted.

There is no serious contention that the lumber was piled in the street and in close proximity to the tracks of the railroad company, and there was evidence tending to show that the plaintiff's intestate, who was the conductor of one of the trains then using the track, was knocked from his position on the side ladder by the lumber and killed. Early in the morning of 1 June, 1917, while it was yet dark, the motorman, the intestate being in the cab with him, drove the engine from the Tate furniture factory to the High Point furniture factory, which was a short distance north of the Tate factory, to get a box car which had been placed there several days before. The motorman testified that he had "no trouble" in passing the lumber that morning. The car was coupled to the engine, in front of it, so that it was pushed back along Perry Street to Green Street. The intestate, who was the conductor, got upon the step near the front of the box car, on the left side of it, and on the same side of the track where the lumber was piled. There was a hand-hold there for him to use. He took this position to attend to the switch and give necessary signals. It was his duty to take care of the front of the train. The motorman could not see Ridge from his cab except once, and that was when they were turning the curve near the High Point factory yard, but when the car straightened out he was not in the motorman's line of vision. The next time the motorman saw him he was lying on the ground near the lumber, and was dying. The motorman stopped the train and went to his assistance, but he died soon after he reached him.

As they went from Greene Street a few days before (28th or 29th May) to the High Point factory, in order to take the car there and leave it, the car was behind the engine, and when the engine cleared the lumber pile the motorman noticed that the car dragged some of the planks from the pile of lumber, and Ridge, who was with him in the cab, "said something about the closeness of the lumber; that it was

dangerous, and some one was going to be hurt, or something to that effect."

There was evidence that there was sufficient light to see the outline of the pile of lumber as they approached it on their return, and the motor-man testified that as they went to the High Point factory that night for the car they did not hit the pile of lumber, but it remained intact. There also was evidence that other lumber had been piled at or about the same place after they had carried the car to the High Point factory. There was an iron step-ladder at the other end of the car from where the intestate was standing and next to the motor engine, and it extended to the top of the car. There was a step-ladder to the top of the car on the side next to the Tate furniture factory, and a witness stated that had he used this ladder or stood on the top of the car his position would have been safe, as he knew of nothing on that side, and that he could have given signals from the top of the car, which could have been reached by the ladder. The two side ladders were "diagonally opposite," and they and the steps and grab-irons at the other ends were in good condition.

There was other evidence bearing more or less upon the issues, but we have given substantially all that we deem necessary to an understanding of the real questions involved, and have endeavored to state it most favorably for the defendants.

The jury found by their verdict that defendants were each guilty of negligence which approximately caused the death of plaintiff's intestate; that he was not guilty of contributory negligence, and then assessed the damages. Judgment and appeal.

*Clifford Frazier and John A. Barringer for plaintiff.*
*King & Kimball for defendant Tate Furniture Company.*
*Peacock & Dalton for defendant City of High Point.*

WALKER, J., after stating the case: The defendant Tate Furniture Company asked for certain special instructions, and the court, we think, gave these which were correct, or such parts of them as were proper, in the general charge to the jury. We cannot see why, in any phase of the evidence, the defendants were not jointly liable to the plaintiff for the death of her intestate, which was plainly caused by their united and wrongful act. We cannot understand why this case, upon its uncontroverted facts or upon the evidence, which, in this respect, bears all one way, is not brought thereby within the principles stated and applied by us in *Gregg v. City of Wilmington and James F. Wool,* 155 N. C., 18. As to the Tate Furniture Company, there is the additional fact, which was not in the *Gregg case,* that it was directly and intentionally

violating an ordinance of the city of High Point when it piled the lumber in the street, and thereby obstructed it and rendered it exceedingly dangerous to persons on trains which passed that point. In any view of the facts, whether by reason of the violation of the ordinance or by the act itself of piling the lumber in such close proximity to the railroad track, that company was negligent, and there can be no doubt of the correctness of the verdict, which finds that this act of negligence caused the death of the intestate. Upon the evidence, this proposition is is hardly arguable. The city is also liable because, as the jury properly found, it had notice, or should in the exercise of due care have had notice, that this lumber had been carelessly piled in the street so as to become an obstruction to those entitled to use it and a menace to those operating the trains on the railroad track. It was a public nuisance as defined and understood by the law. But the court left the question of negligence to the jury for them to find the facts, with proper instructions as to the law of negligence. It would, upon the facts, which cannot be seriously denied, appear that there was negligence on the part of both defendants which was the proximate cause of the death, not considering now the contributory negligence of the intestate, if there was any. There was a clear violation of the ordinance when the lumber was piled in Perry Street, and this was negligence *per se,* or, in other words, it was negligence, as matter of law, to be declared by the court, but it was not actionable negligence as it may have resulted in no actual harm. In order to make it actionable, it was necessary to show that it was the proximate cause of the death, as the two must unite so as to become actionable. This is fully explained in *Ledbetter v. English,* 166 N. C., 125; *McNeill v. R. R. Co.,* 167 N. C., 390; *Paul v. R. R. Co.,* 170 N. C., 230.

It was said by *Justice Allen* in the *Paul Case:* "It is established by the evidence that the defendant blocked a public crossing in the town of Parkton with a train of cars in violation of the ordinance of the town, and this is negligence; but a plaintiff cannot recover upon proof of negligence alone. He must go further and show that the negligence complained of is the proximate cause of his injury."

And in *Rich v. Electric Co.,* 152 N. C., 694, by *Justice Manning:* "It seems to us that the principle is clearly settled by this Court in the cases cited that while the violation of a statute is negligence, yet to entitle the plaintiff seeking to recover damages for an injury sustained, he must show a causal connection between the injury received and the disregard of the statutory prohibition or mandate—that the injury was the proximate cause; and this requirement is fundamental in the law of negligence."

The Court said in *Ledbetter v. English, supra,* at p. 130: "When it is remembered that negligence is the failure to perform a duty imposed

by law, it necessarily follows that the failure, without legal excuse, to obey the provisions of a statute or ordinance imposing a public duty is negligence, and not merely evidence of negligence, and that when this is proven, the plaintiff has furnished some evidence of a right to recover, which can, however, avail him nothing unless he goes further and proves that this failure of duty was the real or proximate cause of his injury."

It may be stated another way: When the violation of a statute or ordinance is shown, it is negligence in itself, but is not actionable until damage appears as its proximate effect, so that a causal relation between them is established. *Brewster v. Elizabeth City,* 137 N. C., 392; *Crenshaw v. R. R. Co.,* 144 N. C., 314; *Hanes v. Shapiro,* 168 N. C., 24, and *McAtee v. Mfg. Co.,* 166 N. C., 457, where it is said: "It is true that no cause of action can arise by reason of a negligent default unless there is continuous and natural sequence and which a person of ordinary prudence could foresee would naturally and probably ensue."

The Court said in the *Crenshaw case, supra:* "The burden is always on the plaintiff to show by a preponderance of the evidence that the defendant committed a negligent act, and that it was the proximate cause of the injury. The two facts must coexist and be established by the clear weight of the evidence before a case of actionable negligence is made out." But the negligence of the defendants is so apparent that it is scarcely required that we should prolong the discussion. The court correctly charged as to the element of proximate cause, defining and explaining it to the jury with sufficient precision.

As to the intestate's contributory negligence: We are unable to say, upon the evidence and as matter of law, that contributory negligence was conclusively shown, for there are permissible views of the evidence which make it a matter for the jury. The question, at last, is whether the intestate acted as a man of ordinary prudence would have done in the same circumstances, considering that he was, at the time of his death, engaged in operating the train and intent upon the performance of his duties. When the motor engine passed the lumber pile the same morning there was no difficulty in passing it safely, and between 28th May and 1st June of that year another pile of lumber had been placed by the side of the track. Whether the plaintiff selected the better method of performing his work was also a question for the jury, and the learned judge submitted all the essential questions of fact to them with proper explanation of the law.

If he had withdrawn the question from the jury and decided it himself as matter of law, and directed them to answer the third issue "Yes," it would have been error, as, for one reason—and there are others equally strong—he would have taken from the consideration of the jury the question as to the credibility of the witnesses. For illustration: it was

for them to say whether they believed the motorman when he stated what the intestate said in regard to the dangerous character of the pile of lumber, and whether at the time he was killed the intestate knew of the danger; and it was also necessary for the jury to decide whether the intestate exercised due care and prudence in the manner of doing his work. It is true, generally speaking, that when two methods are presented for doing a thing, the one safe and the other dangerous, the servant should, in the exercise of ordinary care, adopt the safer course; but in its application, this rule, like all others, will be found to depend upon the particular facts of the case, which the jury must find.

It would be useless to consider the case more extensively or more in detail. The charge of the court was full, and the presiding judge carefully stated the contentions and explained all the rules of law applicable to the facts as the jury might find them to be. It did not fall short of a strict observance of the statute in any respect, and gave the defendants the full benefit of all the instructions to which they were entitled. The question involved was free from any difficulty in law, and the just result depended very largely upon how the jury should find the facts to be. The charge was certainly not unfavorable to the defendants.

Whether the city of High Point has properly brought its appeal to this Court or not makes little practical difference, as we hold that, if it has, there was no error as to either defendant. The question as to primary and secondary liability was properly submitted to the jury, and we think that, in law and in fact, they have returned a correct verdict upon that question.

We have reviewed and examined the record with great care and scrutiny and can discover no error therein.

No error.