HUNTER ET AL., APPELLEES, *v.* CITY OF CLEVELAND, APPELLANT.

[Cite as Hunter v. Cleveland (1976), 46 Ohio St. 2d 91.]

(No. 75-592—Decided April 28, 1976.)

*Stewart & DeChant Co., L. P. A.,* and *Mr. George J. Frantz,* for appellees.

*Mr. James B. Davis,* law director, and *Mr. Thomas A. Smith,* for appellant.

*Per Curiam.* The principal question presented in this cause is whether the city had notice that the barricades and lanterns it places around excavations are habitually removed, leaving the excavations unguarded.

Before reaching that issue, two initial observations should be made.

First, the plaintiff Michael Hunter was six years old at the time of the accident. As such, he is conclusively presumed to be incapable of negligence. *DeLuca* v. *Bowden* (1975), 42 Ohio St. 2d 392, 329 N. E. 2d 109; *Holbrock* v. *Hamilton Distributing, Inc.* (1967), 11 Ohio St. 2d 185, 228 N. E. 2d 628. Had the plaintiff not been of such tender years, this court would have been compelled to find that the injuries were the result of his own conduct under the facts of this case.

Second, although the city of Cleveland argues otherwise, it is clear that this case comes within the ambit of R. C. 723.01, since the plaintiff was attempting to cross the street at a crosswalk.

Turning, then, to the issue of notice, we find the following testimony of one of the city employees:

"Q. So that, on this particular day and on this particular job, how many barricades did you use, altogether?

"A. Altogether? On this job we used—it depends on how long the hole is.

"Q. I believe you previously testified, about eight?

"A. About eight. Something like that. I can't really say."

This establishes that there were about eight barricades surrounding the excavation when the workers left the job site.

The testimony continues:

"Q. Now, when you got back to the jobsite in the morning, you didn't find the barricades up, isn't that right?

"A. That's correct.

"Q. They were down?

"A. They were down.

"Q. But that's not unusual? This usually happens?

"A. This usually happens.

"Q. And when you got back to this jobsite the next day, the lanterns were gone?

"A. Right.

"Q. And that, again, is not unusual?

"A. That's right.

"Q. This usually happens?

"A. That happens all the time.

"Q. As a matter of fact, I think you told me you used something like a box of lanterns a week?

"A. Right.

"Q. But this invariably happens on these jobs? They dispose of barricades and they dispose of the lights?

"A. That's correct.

"*  *  *

"Q. And it was on the instructions of your supervisor that you put up these barricades, is that right?

"A. That's correct.

"Q. So, we know that you say you put up the barricades and the lanterns, right?

"A. That's correct.

"Q. But we also know that these are invariably taken, or removed, during the night? Right?

"A. They take them, yes, that's true.

"Q. So, we know that even though you put them up, you know that they are not going to be there in the morning, right?

"A. (A nod of the head.)"

From the above testimony, it is clear that there was sufficient evidence that the city had notice that the barricades and lanterns were habitually removed, to uphold the finding of liability reached in the judgment of the trial court.

The court also notes, in answer to the dissenting opinion in the Court of Appeals, that plaintiffs did offer methods which the defendant could have used to remove the danger in the crosswalk area of the excavation. One was to place metal or wooden plates over the hole in the crosswalk area. Another was to refill the hole with loose soil in the crosswalk area, which could easily be removed the next morning. Especially since this crosswalk was in the vicinity of a school playground, either of those precautions would have been a slight burden compared to the likelihood of serious injury to school children.

For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, STERN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.

CORRIGAN, J., dissents.