WILLIAMSON, A MINOR, ET AL., APPELLEES, *v.* PAVLOVICH ET AL.;
CITY OF CLEVELAND, APPELLANT.

[Cite as Williamson *v.* Pavlovich (1989), 45 Ohio St. 3d 179.]

(No. 88-834—Submitted April 25, 1989—Decided August 30, 1989.)

*Mark D. McGraw,* for appellees.

*Marilyn G. Zack,* director of law, *Nick Tomino* and *Franzetta D. Turner,* for appellant.

*Calfee, Halter & Griswold, John E. Gotherman* and *Stanley J. Dobrowski,* urging reversal for *amicus curiae,* Ohio Municipal League.

HOLMES, J. The central issue presented in this case is whether illegally parked cars along a highway, which contribute generally to traffic congestion, create a nuisance for which a municipality may be held liable. Also at issue is whether a municipality may be found liable for failing to install certain traffic signs, or failing to enforce existing ones. The appellees asserted below that a question of fact was presented regarding whether there was an actionable nuisance by the presence of parked cars located on Barber Avenue on or about May 8, 1984, and therefore, a directed verdict was improperly granted by the trial court. For the reasons that follow we find that the trial court properly entered a directed verdict in favor of the city and thus we reverse the court of appeals.

Appellees base their negligence action on the duty imposed upon municipal corporations pursuant to R.C. 723.01,[2] which provides:

special power to regulate the use of the streets. The legislative authority of a municipal corporation shall have the care, supervision, and control of the public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts within the municipal corporation, and the municipal corporation shall cause them to be kept open, in repair, and free from nuisance."

[2] The General Assembly merely updated the language contained in R.C. 723.01, as amended on November 20, 1985, which now provides:

"Municipal corporations shall have

"Municipal corporations shall have special power to regulate the use of the streets. The legislative authority of such municipal corporation shall have the care, supervision, and control of public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts within the municipal corporation, and shall cause them to be kept open, in repair, and free from nuisance."

In order to adequately address the issues presented by R.C. 723.01, we will first discuss the municipality's responsibility to keep the highways "free from nuisance" and then its responsibility to "care [for], supervis[e], and control [the] public highways."

A nuisance has been generally recognized as something that is either obnoxious or offensive to others. See *Cardington* v. *Fredericks* (1889), 46 Ohio St. 442, 446, 21 N.E. 766, 767 (an obstruction to a highway caused by a state of disrepair is a nuisance). Originally, nuisances were only actionable for the interference with the use or enjoyment of a person's land and thus were labeled "private nuisances." Prosser & Keeton, Law of Torts (5 Ed. 1984) 617, Section 86, citing *Warren* v. *Webb* (1808), 1 Taunt. 379, 127 Eng. Rep. 880. The earliest cases which were couched in terms of a public nuisance were encroachments upon the royal domain of the public highways. Apparently, there was a "superficial resemblance between the blocking of a private right-of-way and the blocking of a public highway to keep men contented with calling the latter a nuisance as well; and 'thus was born the public nuisance * * *.' " Prosser & Keeton, *supra,* at 617, citing Newark, The Boundaries of Nuisance (1949), 65 L.Q. Rev. 480, 482. As stated, the court of appeals held that illegally parked cars as presented in this case could legally be held to be a public nuisance of the type intended to be abated under R.C. 723.01. We must disagree.

This court held in *Standard Fire Ins. Co.* v. *Fremont* (1955), 164 Ohio St. 344, 58 O.O. 130, 131 N.E. 2d 221, paragraph three of the syllabus:

"Section 3714, General Code (Section 723.01, Revised Code), providing that municipal corporations shall have special power to regulate the use of streets, and that the legislative authority of a municipal corporation shall have the care, supervision, and control of public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts within the corporation, and shall cause them to be kept open, in repair, and free from nuisance, is in derogation of the common law and must be strictly construed; and the scope and application of such statutory provisions to streets or highways are limited to conditions affecting the actual physical structure of the streets or highways and to the physical obstructions or hindrances to travel thereon."

Similarly, in *Gabris* v. *Blake* (1967), 9 Ohio St. 2d 71, 38 O.O. 2d 199, 223 N.E. 2d 597, paragraph three of the syllabus, this court decided:

"Section 723.01, Revised Code, requiring municipalities, *inter alia,* to keep their streets, highways and public grounds open, in repair and free from nuisance, embraces only those conditions affecting the actual physical conditions existing in or on highways, streets and public grounds themselves." See, also, *Wooster* v. *Arbenz* (1929), 116 Ohio St. 281, 156 N.E. 210.

The question which arises from *Gabris, supra,* and *Standard Fire Ins. Co., supra,* concerns what constitutes an "actual physical condition" affecting the highway streets and public grounds, which rises to the level of an actionable nuisance. The court has

identified certain obstructions or impediments that are clearly nuisances under R.C. 723.01. Specifically, in *Hunter* v. *Cleveland* (1976), 46 Ohio St. 2d 91, 75 O.O. 2d 160, 346 N.E. 2d 303, this court found that lanterns and barricades which were habitually removed, leaving excavations unguarded, caused a nuisance. See, also, *Dickerhoof* v. *Canton* (1983), 6 Ohio St. 3d 128, 6 OBR 186, 451 N.E. 2d 1193, paragraph two of the syllabus (pursuant to R.C. 723.01, a failure to keep the regularly traveled shoulder of a highway in repair was an actionable nuisance).

In other jurisdictions, items such as boulders, building materials, dirt piles or ridges, lumber piles, paving materials, pipes, rubbish, stepping blocks, and tree limbs projecting into the street at a low angle were all determined to be actionable obstructions for which a municipality would be liable. *May* v. *Anaconda* (1901), 26 Mont. 140, 66 P. 759 (boulders); *Shafir* v. *Carroll* (1925), 309 Mo. 458, 274 S.W. 755 (building materials placed on the street by a contractor); *Streeter* v. *Marshalltown* (1904), 123 Iowa 449, 99 N.W. 114 (dirt ridge sixteen inches high and four to five feet wide and placed in the center of a well-traveled highway); *Ridge* v. *High Point* (1918), 176 N.C. 421, 97 S.E. 369 (lumber pile in street in violation of ordinance); *Louisville* v. *Tompkins* (Ky. 1909), 122 S.W. 174 (paving materials left on a street that were to be used on another street); *Shalley* v. *New Orleans Public Service, Inc.* (1925), 159 La. 519, 105 So. 606 (drain pipe in street near streetcar track); *Hazzard* v. *Council Bluffs* (1893), 87 Iowa 51, 53 N.W. 1083 (rubbish and brickbats washed into street by culvert); *McCormack* v. *Robin* (1910), 126 La. 594, 52 So. 779 (stepping blocks); *Louisville* v. *Michels* (1903), 114 Ky. 551, 71 S.W. 511 (low-lying tree limbs that project into the street); see, also, *Jones* v. *Great Barrington* (1929), 269 Mass. 202, 168 N.E. 779.

The Court of Appeals of New York in *Frank* v. *Warsaw* (1910), 198 N.Y. 463, 92 N.E. 17, was confronted with the issue of an obstruction which remained on a public highway for several weeks and eventually caused injury to another. The court held that, "when the occupation [of a street or highway by an obstruction] is so protracted as to possess an element of permanency * * * its obstructive character makes it the duty of the municipal authorities to remove it." *Id.* at 469, 92 N.E. at 18.

Moreover, a New York appellate court found a municipality liable for an abandoned vehicle left on a public highway which caused injury to a child. *Burns* v. *Brooklyn Union Gas Co.* (1940), 258 App. Div. 348, 16 N.Y. Supp. 2d 581. The court decided that the municipality had a duty to see that "the street was kept clear of dangerous and unnecessary obstructions which, with reasonable care, commensurate with the circumstances, could be discovered and avoided." *Id.* at 349, 16 N.Y. Supp. 2d at 583. In the present case, the illegally parked cars were temporarily standing on the side of the highway, and not parked in such a way as to possess an element of permanency, which would have created a duty upon the municipality to remove them.

This court has also determined that not all obstructions or impediments to a municipality's highways are nuisances. For example, a catch basin and drainage slope which were adjacent to a roadway and not a part of the paved or traveled portion of the street did not render the street unsafe for customary vehicular or pedestrian travel and did not cause injury to a person using the street in an expected and ordinary manner. *Lovick*

v. *Marion* (1975), 43 Ohio St. 2d 171, 72 O.O. 2d 95, 331 N.E. 2d 445. Also, in *Geideman* v. *Bay Village* (1966), 7 Ohio St. 2d 79, 36 O.O. 2d 59, 218 N.E. 2d 621, paragraph one of the syllabus, we found no duty upon municipalities to install guardrails, barriers or curbs between portions of highways used primarily for vehicular travel or parking and sidewalks adjacent thereto, even where such automobiles actually encroached upon the sidewalks.

Additionally, this court has found that even where items exist as actual physical obstructions to a highway, there may, under the circumstances of the case, not be a nuisance found under R.C. 723.01. *Ruwe* v. *Bd. of Springfield Twp. Trustees* (1987), 29 Ohio St. 3d 59, 60, 29 OBR 441, 442, 505 N.E. 2d 957, 958. The facts in *Ruwe* evidenced that a muffler exhaust system had been lying upon a municipality's highway for approximately one hour and fifteen minutes, and by its presence contributed to a vehicular accident. This court found in favor of the municipality on the issue of negligence and cited *Taylor* v. *Cincinnati* (1944), 143 Ohio St. 426, 447, 28 O.O. 369, 377, 55 N.E. 2d 724, 733, for the proposition that " ' "[t]he duty resting upon municipal corporations * * * to keep their streets and other public ways 'open, in repair, and free from nuisance,' requires reasonable care and vigilance, in view of all the surroundings, to keep such streets and ways in a reasonable, safe condition for travel in the usual and ordinary modes, but does not exact that which is impracticable. * * *" ' " (Emphasis deleted.) *Ruwe, supra,* at 61, 29 OBR at 443, 505 N.E. 2d at 959. The *Ruwe* court also noted that "[a] municipal corporation is not an insurer against accidents upon its streets." *Id.*; see, also, *Village* v. *Kallagher* (1894), 52 Ohio St. 183, 186, 39 N.E. 144, 145; *Taylor, supra.*

In surveying municipal immunity for obstructions on public highways in other states, we note that ash piles, curb defects, firehoses, party walls, loosened paving bricks and rocks have all been found not to constitute an actionable obstruction for which municipal liability would arise. *Kelchner* v. *Nanticoke* (1904), 209 Pa. 412, 58 A. 851 (ash piles); *Vezina* v. *Hartford* (1927), 106 Conn. 378, 138 A. 145 (firehoses); *Thelin* v. *Downs* (1929), 109 Conn. 662, 145 A. 50 (party walls); *Beaumont* v. *Murphy* (Tex. Civ. App. 1937), 107 S.W. 2d 468 (loosened paving bricks); *Beaumier* v. *Heath* (1933), 282 Mass. 312, 185 N.E. 6 (rocks).

We conclude that the parked cars in this case were not a nuisance of the type intended to be covered by the General Assembly when it enacted R.C. 723.01. Specifically, the illegally parked cars in this case were not an "actual physical condition," or a "[physical] obstruction," which would rise to the level of a nuisance, since they were only parked temporarily along the side of the highway, and did not significantly obstruct or impede the flow of traffic.[3]

Therefore, we hold that, pursuant

---

[3] In the case *sub judice,* Michael Williamson was attempting to cross Barber Avenue when he was struck by a car traveling in the center of the highway. It is important to note that Michael was crossing from the side of the road where legally parked buses were located, and not where the parked cars (which are alleged to have caused a nuisance) were waiting. Therefore, if there was any obstruction to Pavlovich's view of Michael, it was due to the parked buses and not to the parked cars.

to R.C. 723.01, illegally parked cars located on the side of a highway, which contribute generally to traffic congestion, do not as a matter of law constitute a nuisance which will give rise to municipal liability.

In focusing upon whether the municipality in this case failed to properly care for, supervise and control the highway at issue, pursuant to R.C. 723.01,[4] the appellant argues in its first proposition of law that "[a] municipality's discretionary decision regarding the installation of traffic control devices such as 'No Parking' signs is a planning function involving basic policy considerations and the exercise of official discretion for which immunity attaches." In reversing the trial court's granting of the city's motion for directed verdict, the court of appeals held that "jurors could properly find that the city failed to exercise reasonable care to eliminate this recurring problem [*i.e.*, traffic congestion] by (a) posting 'No Stopping' or 'No Standing' signs instead of 'No Parking' signs." Consequently, we must determine in this case whether the city had an affirmative duty to the appellees to post new traffic signs which provided for "No Standing" as well as "No Parking" along Barber Avenue.

In *Tolliver* v. *Newark* (1945), 145 Ohio St. 517, 31 O.O. 179, 62 N.E. 2d 357, paragraph three of the syllabus,[5] this court, in making the distinction between governmental and corporate duties, held that "[t]he enactment and enforcement of a municipal ordinance which provides for the regulation of traffic upon the streets, involves the exercise of the police power, and a municipality is not liable for failure or neglect in the exercise of that governmental function."

Also, the *Tolliver* court noted:

" 'The manner in which a highway of a city is used is a different thing from its quality and condition as a street. The construction and maintenance of a street in a safe condition for travel is a corporate duty, and for a breach of such duty an action will lie; but making and enforcing ordinances regulating the use of streets brings into exercise governmental, and not corporate, powers, and the authorities are well agreed that for a failure to exercise legislative, judicial, or executive powers of government, there is no liability.' " (Emphasis deleted.) *Id.* at 523, 31 O.O. at 182, 62 N.E. 2d at 360, quoting from 43 Corpus Juris (1927) 996, Section 1783.

The *Tolliver* court went on to hold, *inter alia*, that the decision to erect certain traffic signs, *i.e.*, "stop signs," involves a governmental rather than a corporate duty and, therefore, the failure to perform such a duty would not impose liability upon a municipality. *Id.* at 525-526, 31 O.O. at 183, 62 N.E. 2d at 361-362.

However, in *Fankhauser* v. *Mansfield* (1969), 19 Ohio St. 2d 102, 109-110, 48 O.O. 2d 103, 107, 249 N.E. 2d 789, 793, this court held that once

---

[4] The *amicus curiae* suggests we rely on R.C. Chapter 2744, which now establishes the parameters of municipal tort liability. R.C. 2744.01 *et seq.* was enacted on November 20, 1985 in response to the abrogation of common-law municipal immunity. Leg. Serv. Comm., Analysis of Sub. H.B. 176, 116 Gen. Assembly, 1985 Baldwin's Ohio Leg. Serv. 5-682. However, we note that the effective date of the statute was after the events that took place in the case before us, and therefore cannot control our decision in this case.

[5] It should be noted that this court in *Fankhauser* v. *Mansfield* (1969), 19 Ohio St. 2d 102, 110, 48 O.O. 2d 103, 107, 249 N.E. 2d 789, 793, overruled paragraph five of the syllabus of *Tolliver, supra,* which dealt with the municipality's duty to maintain a traffic control device in a proper state of repair.

the decision has been made to install a traffic control device such as a "stop sign" or "traffic control signal," then the failure to maintain the device in proper repair gives rise to municipal liability pursuant to R.C. 723.01.

This court partially abolished the judicially created doctrine of municipal immunity in *Enghauser Mfg. Co.* v. *Eriksson Engineering Ltd.* (1983), 6 Ohio St. 3d 31, 6 OBR 53, 451 N.E. 2d 228, paragraph one of the syllabus; see *Haverlack* v. *Portage Homes, Inc.* (1982), 2 Ohio St. 3d 26, 2 OBR 572, 442 N.E. 2d 749, paragraph two of the syllabus. However, immunity was preserved for "acts or omissions involving the exercise of a legislative or judicial function or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a *high degree of official judgment or discretion.* * * *" (Emphasis added.) *Enghauser, supra,* paragraph two of the syllabus; see, also, *Winwood* v. *Dayton* (1988), 37 Ohio St. 3d 282, 284, 525 N.E. 2d 808, 810. With the advent of the rule in *Enghauser, supra,* abolishing common-law municipal immunity, the courts were faced with a new distinction as to those actions which required the application of a new standard. The governmental-proprietary distinction of the old common law has now been replaced by a distinction between "those functions which rest on the exercise of judgment and discretion and represent planning and policy-making and those functions which involve the implementation and execution of such governmental policy or planning." *Enghauser, supra,* at 35, 6 OBR at 56, 451 N.E. 2d at 232; see, generally, Comment, Sovereign Immunity for Political Subdivisions in Ohio: The Past

as Present (1986), 13 Ohio N.U. L. Rev. 203; Note, Municipal Immunity in Ohio — How Much Can a Municipality Do? (1984), 15 U. Tol. L. Rev. 1559, 1578-1599. In *Winwood* v. *Dayton, supra,* we held that the decision whether or not to install traffic control devices was exclusively within the municipality's prerogative "requiring the consideration of basic policy and the exercise of independent judgment." *Id.* at 284, 525 N.E. 2d at 810. Specifically, "[t]he factors involved in determining the necessity or advisability of installing traffic control devices include the regulation of traffic patterns and traffic flow at the specific location and in surrounding areas, fiscal priorities, safety, and various engineering considerations. Thus, the decision * * * is a planning function, involving basic policy considerations and the exercise of a *high degree of official discretion.*" (Emphasis added.) *Id.*

Similarly, the case before us today involves the weighing of "fiscal priorities, safety, and various engineering considerations" on whether or not to install different traffic signs at a specified location in order to control traffic congestion by removing parked or standing cars. We believe that the decision to install or forgo installation of these signs on the location in question involved a "high degree of official discretion." Therefore, we hold that the appellant is immune from tort liability in not erecting "No Standing" signs. See *id.; Enghauser, supra,* at paragraph two of the syllabus.

The appellant contends in its second proposition of law that "where no special relationship exists, a municipality's duty to enforce traffic laws is a duty to the general public and a breach thereof is not actionable."[6] In discuss-

---

[6] Under the city ordinances, the city's Division of Police was charged with the duty of enforcing the Traffic Code, including "No Parking" restrictions. See

ing the special duty or relationship rule in *Sawicki* v. *Ottawa Hills* (1988), 37 Ohio St. 3d 222, 525 N.E. 2d 468, in paragraphs one through three of the syllabus, we held that:

"Generally, a municipality may not be found liable in negligence when its employees act or refuse to act so as to conform to a municipal ordinance and/or a state statute.

"When a duty which the law imposes upon a public official is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, is generally a public and not an individual injury.

"The public duty rule, and the special duty exception, comprise a doctrine which is independent of, and accordingly survived the abrogation of, sovereign immunity."

In the case *sub judice,* the appellant claims that it was not under a duty to either ticket or remove the parked cars that were causing the alleged nuisance. We agree since the enforcement of the traffic ordinance in this case was a duty imposed upon the city through its police department, and this duty was to the public generally. Thus, a failure to perform, or inadequate performance of this type of duty in the absence of a special relationship, is generally a public and not an individual injury.

The appellant maintains that there was no special relationship between the parties under the public duty-special duty theories of liability that would uphold a cause of action for not ticketing or towing the parked cars at issue. In *Sawicki, supra,* paragraph four of the syllabus, we held:

"In order to demonstrate a special duty or relationship, the following elements must be shown to exist: (1) an assumption by the municipality, through promises or actions, of an affirmative ,duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking."

In considering the case before us, although the city installed "No Parking" signs, it was a matter of municipal discretion whether or not to enforce them. Even assuming, *arguendo,* the city had an affirmative duty to consistently monitor the no parking zone, there were no allegations by the appellees of other accidents or repeated requests from concerned citizens regarding tangible obstructions which impeded the flow of traffic (after the implementation of the signs) that would qualify as "knowledge on the part of the municipality's agents that inaction could lead to harm." Also, there was *no* direct contact between the municipality's agents and the injured party in this case. And, finally, there was *no* affirmative undertaking by the municipality in this cause to justify reliance by either the injured party or the driver of the car.

---

Cleveland Codified Ordinances Section 403.01.

In a case similar to the one before us, the Supreme Court of Alabama decided a municipality would not be liable for failing to enforce the traffic code by not ticketing illegally parked cars, which were along the side of a highway and obstructed a driver's view of oncoming traffic causing injury to the driver. *Nichols* v. *Mount Vernon* (Ala. 1987), 504 So. 2d 732. In support of its decision, the court cited previous cases where it held that the failure to provide police protection or the alleged inadequacy of police protection will not supply the basis for a tort action against a city. *Id.* at 733.

Therefore, we hold the decision to enforce certain traffic ordinances regarding the parking of automobiles does not create a special duty in and of itself, and a municipality shall generally not be held liable for failing to enforce such ordinances.

Accordingly, for the reasons stated above, we reverse the judgment of the court of appeals and find that the trial court properly entered a directed verdict in favor of the city and, therefore, reinstate the judgment of the trial court.

*Judgment reversed.*

MOYER, C.J., SWEENEY, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.