PALKO, Appellant,

v.

CITY OF ELYRIA, Appellee.

[Cite as *Palko v. Elyria* (1993), 86 Ohio App.3d 211.]

Court of Appeals of Ohio,
Lorain County.

No. 92CA005374.

Decided Feb. 3, 1993.

*Legal Aid Society* and *Teresa James,* for appellant.

*Mark Betleski* and *Darrel A. Bilancini,* for appellee.

---

QUILLIN, Presiding Judge.

As best we can determine from the record, a city of Elyria sidewalk ended on the property of Frederick and Mildred Biltz (not parties to this appeal) and at the Biltz walkway to their house.  Eight to twelve feet beyond the end of the city concrete sidewalk, and across the Biltz front lawn (but still in the city right-of-way) there was a three foot drop-off created by a retaining wall.

On June 9, 1989, at 8:30 p.m., plaintiff-appellant David Palko and a friend were riding their bicycles on Mound Street in Elyria.  Because an automobile was approaching in the opposite direction, they left the street and began riding on the

concrete sidewalk immediately in front of the Biltz house. The sidewalk ended at that point, but Palko continued along the Biltz's yard for approximately eight to twelve feet where he rode over the edge of the retaining wall. Palko sustained injuries as a result of the fall.

Palko filed this action against Elyria and Mr. & Mrs. Biltz alleging that the city did not keep the sidewalk free from nuisance. There is no claim that the sidewalk itself was defective. The trial court granted summary judgment in favor of Elyria. Palko appeals and raises one assignment of error. We affirm.

### Assignment of Error

"The trial court erred in granting summary judgment without full adjudication of the factual issues at bar, when there exists genuine issues of material fact upon which reasonable minds can differ regarding the existence of a hazardous nuisance and the liability of a municipal corporation for the creation and maintenance of said nuisance."

It is Palko's position that genuine issues of fact exist as to whether the sidewalk was free from nuisance and that summary judgment was therefore inappropriate. We disagree.

R.C. 2744.02 sets forth a general grant of immunity for municipalities and other political subdivisions for their acts and omissions, as well as those of their employees. This section provides in part:

" * * * [A] political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

R.C. 2744.01(C)(2)(e) classifies the maintenance and repair of roads, highways, streets and sidewalks as governmental functions, thus placing Elyria within the scope of R.C. 2744.02 immunity.

R.C. 2744.02(B)(3), however, excepts from the general grant of governmental immunity injuries arising out of the failure to keep, *inter alia*, public roads, sidewalks and public grounds free from nuisance:

"Political subdivisions are liable for injury, death, or loss to persons or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, and free from nuisance, except that it is a full defense to such liability, when a bridge within a municipal corporation is involved, that the municipal corporation does not have the responsibility for maintaining or inspecting the bridge."

Municipalities are further charged with the care and supervision of their streets under R.C. 723.01:

"Municipal corporations shall have special power to regulate the use of the streets. Except as provided in section 5501.49 of the Revised Code, the legislative authority of a municipal corporation shall have the care, supervision, and control of the public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts within the municipal corporation, and the municipal corporation shall cause them to be kept open, in repair, and free from nuisance."

█ Under the above statutes, therefore, a municipality is liable for an injury arising out of its failure to keep a road, sidewalk or public ground open, in repair, and free from nuisance. Consequently, the specific issue which we must determine is whether the condition of the land eight to twelve feet from the end of a sidewalk can be a nuisance.

While this precise fact pattern has not previously been addressed, the Ohio Supreme Court has considered various analogous situations in which a municipality is not responsible for a particular condition. In *Strunk v. Dayton Power & Light Co.* (1983), 6 Ohio St.3d 429, 6 OBR 473, 453 N.E.2d 604, the court held that a light pole located adjacent to the shoulder of the roadway did not fall within the boundaries of municipal liability, reasoning that while a municipality is liable for failure to keep the shoulder of a roadway in repair and free from nuisance, the light pole was not located on the shoulder, but adjacent thereto:

"R.C. 723.01, which requires a municipal corporation to keep it streets and highways open, in repair and free from nuisance, includes only those aspects which affect the physical conditions of such roadways and does not extend to adjacent property." *Id.* at 431, 6 OBR at 475, 453 N.E.2d at 606.

The court has further determined that a municipality is not liable for a catch basin located adjacent to the roadway, nor for cars parked illegally along the side of the highway. See *Lovick v. Marion* (1975), 43 Ohio St.2d 171, 174, 72 O.O.2d 95, 97, 331 N.E.2d 445, 447, and *Williamson v. Pavlovich* (1989), 45 Ohio St.3d 179, 184, 543 N.E.2d 1242, 1247. In reaching its conclusion, the *Williamson* court emphasized:

"Section 723.01, Revised Code * * * is in derogation of the common law and must be strictly construed; and the scope and application of such statutory provisions to streets or highways are limited to conditions affecting the actual physical structure of the streets or highways and to the physical obstructions or hindrances to travel thereon." *Id.* at 181, 543 N.E.2d at 1245.

The court has held, however, that municipal responsibility extends to the park strip located between a sidewalk and the streets. In *Joseph v. Portsmouth*

(1975), 44 Ohio St.2d 155, 156–157, 73 O.O.2d 456, 457–458, 339 N.E.2d 622, 622–623, the court cited with approval the reasoning in *Barnesville v. Ward* (1911), 85 Ohio St. 1, 96 N.E. 937, paragraph one of the syllabus, where it stated that a municipality may maintain the strip between the curbing of the paved street and sidewalk for the purpose of beautifying the city, but that the city is responsible for keeping the strip open, in repair and free from nuisance.

Also within a municipality's statutory responsibility are excavation areas which are unguarded due to the continual disappearance of lanterns and barricades, (*Hunter v. Cleveland* [1976], 46 Ohio St.2d 91, 94, 75 O.O.2d 160, 162, 346 N.E.2d 303, 305) and regularly traveled shoulders of highways. *Dickerhoof v. Canton* (1983), 6 Ohio St.3d 128, 131, 6 OBR 186, 188, 451 N.E.2d 1193, 1195.

▇ The common ground to all these cases is that municipal liability is limited to those conditions which render a street or sidewalk unsafe for usual and ordinary modes of travel.

▇ We agree with the trial court that the three foot retaining wall eight to twelve feet from the end of the sidewalk did not render the sidewalk unsafe for usual and ordinary modes of travel and therefore did not constitute a nuisance. The assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

CACIOPPO and COOK, JJ., concur.