[Cite as *Ali v. Lucas Cty. Dog Warden*, 2017-Ohio-2809.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

George Ali                                            Court of Appeals No. L-16-1274

      Appellee                                   Trial Court No. CVH-16-02326

v.

Lucas County Dog Warden                   **DECISION AND JUDGMENT**

      Appellant                                  Decided:  May 12, 2017

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, Maureen O.
Atkins and Elaine B. Szuch, Assistant Prosecuting Attorneys,
for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Respondent-appellant is the Lucas County Dog Warden ("the warden").  The petitioner-appellee is George Ali.  Ali appealed to the Toledo Municipal Court after the warden designated his dog a "vicious dog" as defined by R.C. 955.11(A)(6)(a).  In an order dated October 17, 2016, the municipal court adopted a magistrate's decision which

granted Ali's appeal and rescinded the "vicious dog" designation. The warden appealed. For the following reasons, we affirm the municipal court judgment.

## I. Background

{¶ 2} On January 24, 2016, Mi.S ("father") and Ma.S. ("mother") took their children, five-year-old A.S., four-year-old M.S., and 13-month-old D.S., to Ali's home to discuss the possibility of purchasing a Rottweiler puppy from him. Ali had placed an advertisement on www.craigslist.org, and father and mother wanted to meet with him to determine whether he was a credible breeder. Ali introduced the family to the dogs that would be the parents of the not-yet-born puppy. The male dog was a Rottweiler named Boss.

{¶ 3} Boss was five years old and weighed approximately 130-140 pounds. Ali got him when he was six weeks old. Ali brought him out of his cage and the family petted and played with him. Ali had Boss perform tricks for the family to demonstrate how well-trained and obedient he was. About five minutes later, when it was time to discuss business, Ali put the dogs, including Boss, back in their cages.

{¶ 4} As the parents tried to interview Ali, their children were anxious to play with the dogs. M.S. begged Ali to see the dog again. Ali asked mother if it was okay, and she said that it was. Ali brought Boss out again. He put the dog to his left, and the children were to his right.

{¶ 5} As the adults talked, the two older children got closer to the dog. They were down on the ground next to him. Soon after, the dog yelped. The parents saw that Boss

2.

had bitten A.S. and she was bleeding from her neck. Father took her in his arms and applied pressure. A friend of Ali's called 9-1-1 and EMS arrived within five minutes. First responders bandaged A.S.'s wound and transported her by ambulance to St. Vincent Mercy Hospital. When the emergency department physician removed her bandages, he found that A.S. was experiencing significant bleeding. Her condition became critical and surgery was performed to determine the source of the bleeding. Eventually it was controlled and A.S. recovered, but she required ongoing medical care and physical therapy.

{¶ 6} On February 3, 2016, Ali was notified that the warden had designated Boss a "vicious dog" as defined by R.C. 955.11(A)(6)(a). This designation requires an owner to comply with the requirements of R.C. 955.22(D) through (I), R.C. 955.11(D), and R.C. 955.54. These statutes set forth procedures relating to such things as confining, tethering, registering, and neutering the dog, transferring ownership of the dog, and obtaining liability insurance, among other things. Ali appealed this designation to the Toledo Municipal Court. On March 14, 2016, a magistrate heard testimony from Ali, A.S.'s parents, and a canine officer with the county dog warden. In a decision dated April 7, 2016, the magistrate recommended that Ali's appeal be granted. The warden filed objections to the recommendation, which the trial court overruled. The warden appealed to this court, but we dismissed the appeal for lack of a final appealable order. *Ali v. Lucas Cty. Dog Warden*, 6th Dist. Lucas No. L-16-1186 (Oct. 4, 2016).

3.

**{¶ 7}** On October 17, 2016, the trial court entered a judgment compliant with Civ.R. 54(A), and the warden filed the present appeal. He assigns the following error for our review:

> The Trial Court Erred in Granting Petitioner's Appeal Rescinding the Vicious Dog Classification as Going Against the Manifest Weight of the Evidence.

## II. Law and Analysis

**{¶ 8}** The warden argues that his designation of Boss as a vicious dog should be upheld because (1) Ali knew that Boss posed a risk to the children's safety when he invited the family into his home, (2) at just five years old, A.S., as a matter of law, was not capable of "provoking" Boss, and (3) even if A.S. is not too young to have provoked Boss, the behavior at issue does not amount to "provocation" under R.C. 955.11(A)(7).

## A. Designating a Dog as "Vicious"

**{¶ 9}** R.C. 955.11(A)(6)(a) defines "vicious dog" as "a dog that, without provocation * * * killed or caused serious injury to any person." R.C. 955.222(B) authorizes the warden to designate a dog as "vicious." Under R.C. 955.222(C), an owner may challenge this designation by requesting a hearing in the municipal or county court not later than ten days after receiving notification of the designation. *See also* R.C. 955.222(A). At the hearing, the warden has the burden of proving, by clear and convincing evidence, that the dog is a vicious dog. R.C. 955.222(A) and (C). "Clear and convincing evidence" is "[t]he measure or degree of proof that will produce in the mind

of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 104, 495 N.E.2d 23 (1986).

{¶ 10} Following the municipal court's decision, either the owner or the warden may appeal to this court. R.C. 955.222(C). On appeal, we review the trial court's judgment under a manifest-weight standard. *Henry Cty. Dog Warden v. Henry Cty. Humane Soc'y*, 2016-Ohio-7541, 64 N.E.3d 1076, ¶ 13 (3d Dist.). When reviewing a claim that a judgment is against the manifest weight of the evidence, we must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the trier of fact clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In doing so, we must be mindful that "'the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections and use these observations in weighing the credibility of the proffered testimony.'" *Henry Cty. Dog Warden* at ¶ 16, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Where evidence is susceptible of more than one construction, we must interpret it in a manner most favorable to sustaining the verdict and judgment. (Citations omitted.) *Id.*

## B. "Without Provocation"

{¶ 11} Here, the parties agree that Boss inflicted serious injury on A.S. That element of the vicious dog designation is not at issue. The dispute here centers on whether Boss attacked A.S. "without provocation." "Without provocation," under R.C. 955.11(A)(7), "means that a dog was not teased, tormented, or abused by a person, or that the dog was not coming to the aid or the defense of a person who was not engaged in illegal or criminal activity and who was not using the dog as a means of carrying out such activity."

{¶ 12} The terms "teasing," "tormenting," and "abusing" are defined for purposes of R.C. 955.28(B), Ohio's dog-bite statute, and are set forth in 1 Ohio Jury Instructions 409.03, Section 5. "Teasing" means "to annoy or to trouble or worry persistently, to be troublesome or to pester." "Tormenting" is "conduct which provokes a greater annoyance and implies some torture or pain." And "[a]busing" is "mistreatment which includes some physical injury or pain to the animal." These definitions were first recognized in *Ramsey v. King*, 14 Ohio App.3d 138, 470 N.E.2d 241 (12th Dist.1984), and have since been applied by other Ohio courts. *See Quellos v. Quellos*, 96 Ohio App.3d 31, 40, 643 N.E.2d 1173 (8th Dist.1994); *Olmstead v. Forsthoefel*, 3d Dist. Mercer No. 10-12-08, 2013-Ohio-220, ¶ 15.

{¶ 13} In *Ramsey,* a dog bit a three-year-old girl, causing serious injury. She and her parents sued for damages. The court recognized that under R.C. 955.28(B), the

6.

owner of the dog would be liable for damages unless the dog's owner could prove by a preponderance of the evidence that the child had teased, tormented, or abused the dog.

{¶ 14} Like the present case, no one observed the dog bite the child, but sometime within the hour before she was bitten, the child was playing with the dog and was observed with her arms around the dog's head "kind of loving him." *Id.* at 140. At some point during that time, she was also seen grabbing his tail. The owner asked the child to please leave the dog alone because he did not feel well, but the child persisted and had to be told at least one more time to leave the dog alone. The trial court charged the jury on the definitions of "teasing," "tormenting," and "abusing." *Id.*

{¶ 15} The *Ramsey* jury rendered a verdict in favor of the dog owner. On appeal, the plaintiffs argued that a three-year-old child, as a matter of law, is incapable of teasing, tormenting, or abusing a dog, thus a directed verdict should have been entered in their favor. In considering the appellants' argument, the Twelfth District looked to the Ohio Supreme Court's decisions in *Hunter* v. *Cleveland*, 46 Ohio St.2d 91, 346 N.E.2d 303 (1976) and *Holbrock v. Hamilton Distributing, Inc.*, 11 Ohio St.2d 185, 228 N.E.2d 628 (1967).

{¶ 16} In *Hunter,* the Ohio Supreme Court imposed liability on the city of Cleveland for injuries sustained by a six-year-old who fell into a hole in the street while attempting to jump over the hole. In doing so, it noted that "[h]ad the plaintiff not been of such tender years, this court would have been compelled to find that the injuries were the result of his own conduct * * *." *Hunter* at 92. In *Holbrock,* the Ohio Supreme Court

7.

held that "[a] child under seven years of age is, as a matter of law, incapable of contributory negligence." *Holbrock* at syllabus.

{¶ 17} Under this guidance, the Twelfth District held that as a matter of law, a three-year-old is incapable of "teasing, tormenting, or abusing" a dog within the meaning of R.C. 955.28(B). But it explained that its holding was limited, and it specifically refused to determine at what age a child is capable of such conduct:

> We cannot say where the line of demarcation occurs, with respect to the ability of a child to tease, torment, or abuse, within the meaning of R.C. 955.28, but we hold as a matter of law, that a three-year-old child is incapable of such conduct. While a child may be capable of such conduct at the age of five, six, or seven, it would seem axiomatic that there is some age, in infancy, where we cannot attribute the ability to tease, torment, or abuse to a child. For example, an infant only two weeks old surely cannot be considered capable of teasing, tormenting, or abusing a dog. We hold that such is also true for a child the age of three * * *. *Ramsey v. King*, 14 Ohio App.3d at 141, 470 N.E.2d 241.

### C. Analysis of the Warden's Arguments

{¶ 18} While *Ramsey* defined "teasing, tormenting, and abusing" for purposes of R.C. 955.28(B), Ohio's dog bite statute, R.C. 955.11(A)(7) employs the same language in defining "without provocation" as that phrase is used in defining "vicious dog" in section (A)(6)(a). As such, the warden asks that we extend *Ramsey* and find, as a matter of law,

8.

that a five-year-old is incapable of teasing, tormenting, or abusing a dog. Alternatively, the warden claims that even if five-year-old A.S. is not too young to have teased, tormented, or abused Boss, her behavior here does not amount to "provocation" as defined by the statute, and he claims that the designation should stand because Ali invited the family into his home despite knowing that Boss posed a risk to the children.

### 1. Extending *Ramsey*

{¶ 19} We begin by addressing the warden's argument that we should extend *Ramsey* and find that as a matter of law, five-year-old A.S. was incapable of provoking Boss. The issue in *Ramsey* was whether the conduct of a three-year-old child should bar plaintiffs from recovering under a statute that would otherwise impose strict liability on the dog owner. In concluding that recovery should not be barred, the court applied principles originating in negligence or contributory negligence jurisprudence. The court did not go so far as to adopt a hard-and-fast rule that a child under the age of seven cannot tease, torment, or abuse, as the Ohio Supreme Court had done in cases of negligence or contributory negligence. *See Holbrock,* 11 Ohio St.2d 185, 228 N.E.2d 628, at syllabus ("A child under seven years of age is, as a matter of law, incapable of contributory negligence."), and *DeLuca v. Bowden*, 42 Ohio St.2d 392, 329 N.E.2d 109 (1975), paragraph one of the syllabus ("A child under seven years of age is, as a matter of law, incapable of negligence."). Rather, it took a somewhat modified approach, finding that children of three years of age or younger cannot tease, torment, or abuse a dog. It specifically refused to draw a strict line of demarcation beyond that. In considering the

9.

warden's suggestion that we draw this line of demarcation, we make several observations.

{¶ 20} First, we observe that from the perspective of the dog, it hardly makes a difference whether a child pulling his ears or poking his eyes is three years old, five years old, seven years old, or even 15 years old. The canine control officer testified that there were multiple alternative reactions the dog may have displayed in response to being stepped on or being poked in the eye; for example, it could have walked away from the situation, turned away, growled, or given some other warning sign prompting the owner to remove it from the situation. But while alternative responses by the dog were possible, it is difficult to see how the age of the child provides any justification for differentiating a dog's reaction to provocation for purposes of designating a dog as "vicious."

{¶ 21} Second, while we agree with the Twelfth District that a two-week-old baby is incapable of teasing, tormenting, or abusing a dog, we do not necessarily find the same to be true with respect to toddlers, pre-schoolers, or kindergarten-aged children. In fact, common experience would suggest that this is precisely the age that children begin to use teasing as a means of evoking a response.

{¶ 22} And third, while we appreciate that the purpose of R.C. 955.222, the "vicious dog" designation statute, is to protect the public, the effect is to place burdensome obligations on the dog owner. It is the dog warden's burden to prove by clear and convincing evidence that the dog *was not* provoked. R.C. 955.222(C). In contrast, the effect of finding that a child teased, tormented, or abused a dog under R.C.

10.

955.28(B) is to deny damages to an injured child under what would otherwise be a strict-liability statute. It is the dog owner's burden to establish by a preponderance of the evidence, as an affirmative defense, that the dog *was* provoked. So while the vicious dog designation statute and the dog bite statute may employ the same terms used to define a dog as "vicious," we nonetheless conclude that the distinct contexts in which these definitions are applied should not be ignored.

{¶ 23} Because of these reservations, we decline to extend *Ramsey* to hold that a five-year-old, as a matter of law, is incapable of provoking a dog for purposes of designating a dog "vicious."

## 2. A.S.'s Conduct Toward the Dog

{¶ 24} The warden argues that A.S.'s behavior did not amount to provocation. While he acknowledges that no one saw what happened immediately before the event, he claims that there was no indication that A.S. tormented or abused Boss, and given that teasing requires persistent conduct, there was not sufficient time for A.S. to "persistently annoy, trouble, or worry" Boss. He notes that even Ali described A.S.'s conduct as merely "playful."

{¶ 25} It was incumbent on the warden to present clear and convincing evidence that Boss is "vicious." The testimony at the hearing makes clear, however, that no one observed what led Boss to bite A.S. Both of A.S.'s parents said that they did not observe A.S. tease, torment, or behave aggressively toward the dog, but they also testified that

11.

they did not know if A.S. provoked the dog, and they seemed to express that it was entirely possible that she had provoked him.

{¶ 26} Mother described that Boss was scared and whimpering. She admitted stating after the incident that it was "a big possibility" that A.S. had provoked Boss. She testified that she had "no solid proof" if A.S. poked Boss or stepped on his foot. She said she just saw the reaction. She explained that A.S. "said she did nothing," but she said that she "can't take her word for it. She's a little girl."

{¶ 27} In fact, at the hearing, mother was asked whether she had said anything to Ali about her daughter provoking the dog. She responded: "No. It was always, I think it possibly happened. Because he was so wonderful. The dog was great. It possibly did happen. She possibly got his eye. She possibly stepped on his foot."

{¶ 28} Similar to mother, father recalled hearing Boss yelp. And like his wife, he did not observe the conduct immediately preceding the bite. He said that he "could not state, exactly, what happened because [he] didn't witness it." But he also said that he could not say that A.S. did not provoke Boss. He explained: "I don't know if my daughter stepped on it's [sic] tail, stepped on it's [sic] foot. I don't know if my daughter poked it in the eye. I don't know." He specifically stated: "I don't know if my daughter did a behavior that provoked the dog. I have no clue * * *."

{¶ 29} The warden had the burden of proving by clear and convincing evidence that Boss is a "vicious dog." The magistrate in his recommendation noted that he was "troubled that the statute places a high burden on the County to prove a negative—that

12.

the dog was not teased." Nevertheless, he interpreted the statute as requiring just that. We agree with his interpretation. And because we find that the warden failed to present clear and convincing evidence that A.S. did not provoke Boss, we conclude that the trial court's judgment was not against the manifest weight of the evidence.

### 3. Ali's Appreciation for the Risk Posed in Inviting the Family into his Home

{¶ 30} Finally, the warden argues that the "vicious dog" designation should be upheld because Ali invited the family into his home despite knowing that Boss posed a danger to the children. He points to the fact that when the children asked Ali to take Boss out of his cage, he deliberately placed the dog to his left and kept the children to his right. He claims that this demonstrates Ali's awareness of the risk Boss posed.

{¶ 31} The standard for designating a dog "vicious" is not whether the owner is aware of the risk posed by his dog. But even if this were the standard, the warden did not provide clear and convincing evidence that Ali was aware that Boss would harm the children. At the hearing, Ali testified that Boss is well-trained and had never displayed aggression. He said that he had never known Boss to snap at anyone, "let alone a child." He described his dogs as "family-oriented." Ali also explained that he put the dog to one side and the children to another side because he wanted to talk to father and mother and because Boss is large and the couple's baby was crawling on the floor. This evidence does not establish that Ali was aware of a risk that Boss would attack the children.

**{¶ 32}** For these reasons, we conclude that the trial court's decision was not against the manifest weight of the evidence, and we find the warden's sole assignment of error not well-taken.

### III. Conclusion

**{¶ 33}** We find the warden's assignment of error not well-taken, and we affirm the October 17, 2016 judgment of the Toledo Municipal Court rescinding the warden's "vicious dog" designation. The warden is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.          _____
                                                          JUDGE
James D. Jensen, P.J.

Christine E. Mayle, J.            _____
CONCUR.                                            JUDGE

                                       _____
                                                          JUDGE