DECISION AND JUDGMENT ENTRY
Plaintiff-Appellant Helena Winegar, in her capacity as administrator of the estate of Benjamin J. Shiltz, appeals the judgment of the Highland County Court of Common Pleas, which granted the motion for summary judgment of Defendants-Appellees Greenfield Police Department and Officer Gary Schraw, finding that both were sheltered by statutory immunity. Appellant argues in her appeal that the trial court erred when it granted summary judgment in favor of appellees because genuine issues of material fact exist as to whether appellees are immune from liability pursuant to R.C. 2744.02 and 2744.03. We affirm the trial court's judgment in regard to Appellee Greenfield Police Department, reverse the trial court's judgment as to Appellee Officer Gary Schraw, and remand the case to the trial court for further proceedings not inconsistent with this opinion.
 STATEMENT OF THE CASE AND FACTS
On January 17, 1997, Helena Winegar, the mother of Benjamin Shiltz and administrator of his estate, filed a complaint in the Highland County Court of Common Pleas against Appellee Greenfield Police Department and one of its officers, Appellee Officer Gary Schraw. Appellant's complaint set forth claims for the wrongful death of her son and claims pursuant to Section 1983, Title 42, U.S.Code. Her suit alleged that appellees failed to prevent, and were a proximate cause of, the death of her son by failing to remove a drunk driver from the public roadways, when presented with the opportunity to do so.
On April 5, 1996, at approximately 4:55 p.m., while driving his Ford Mustang, James R. Fillmore lost control of his vehicle, causing a single-car accident which resulted in physical injury to Floyd Simmons and the death of Benjamin Shiltz, both of whom were passengers in the car.
Approximately an hour prior to the accident, at 3:30 p.m., Appellee Schraw had stopped Fillmore for squealing his tires. In his deposition, Officer Schraw testified that on the day in question he was working the 8:00 a.m. to 4:00 p.m. shift. At approximately 3:30 p.m., the officer was attempting to unlock someone's vehicle for them in downtown Greenfield, when he heard squealing tires. He turned toward the noise and noticed a black Ford Mustang lurch forward. Officer Schraw then approached the vehicle, which was stopped in traffic at a traffic light. He motioned for the driver of the Mustang to pull over, and the driver complied, legally parking the vehicle on the side of the street.
Officer Schraw testified that, after motioning the vehicle to stop, he approached the car and informed Fillmore why he had stopped him. Fillmore admitted to having squealed his tires, but said his foot had just slipped off the clutch, which he had recently replaced. The officer proceeded to ask Fillmore for his license and proof of insurance. Fillmore handed him his driver's license and informed the officer that his proof of insurance was at home.
During this time, the officer was leaning toward the vehicle, with his head near the driver-side window. The officer noticed an unopened bottle of beer on the floor of the vehicle behind the driver's seat, but noticed no unusual smells or odors of alcohol or smoke emanating from the vehicle or from the individuals situated therein.
A check by Officer Schraw revealed that Fillmore's driver's license was suspended due to lack of insurance, whereupon Officer Schraw returned to the vehicle and asked Fillmore to join him in the cruiser. While Fillmore was in the cruiser, Officer Schraw noticed a faint odor of alcohol on Fillmore. However, the officer testified in his deposition that he needed more than the faint smell of alcohol in order to conduct a field-sobriety test, because he is required to show reasonable grounds that the driver was impaired, and not merely consuming alcohol, as a condition to conducting such tests. The officer issued two citations to Fillmore, one for squealing his tires and the second for driving under suspension. The officer testified that the driving-while-under-suspension violation requires that the individual with the suspended license be removed from the driver's seat of the vehicle.
While the officer and Fillmore were in the police cruiser, Fillmore's passenger, Floyd Simmons, with whom, up until this time, the officer had had no communication, approached the police cruiser and asked permission to enter. After getting into the cruiser, Simmons asked the officer to release the car to him, as he had a valid driver's license and full insurance. Officer Schraw ran a check on Simmons' driver's license and determined that it was valid. The officer asked Simmons if he had been drinking, to which Simmons answered "no." According to his testimony, Officer Schraw did not smell alcohol on Simmons' breath or person, nor did he notice any unusual behavior.
Officer Schraw issued the two citations to Fillmore and instructed Simmons to drive. Simmons replied that he was taking Fillmore home. The officer further instructed Fillmore not to drive until he had a valid driver's license. Officer Schraw last saw the car being driven by Simmons, with Fillmore as a passenger, at approximately 3:58 p.m.
Simmons recollects the events of that day somewhat differently. Simmons' version of events was presented in both his affidavit and his testimony at Fillmore's criminal trial for vehicular homicide. According to Simmons, on April 5, 1996, he was off work and he and James Fillmore were driving around Greenfield in Simmons' pick-up truck from about 1:00 p.m. During their time in Simmons' truck they bought a six-pack of beer at a drive-through convenient store, and they each drank two to three bottles, smoked marijuana, and took some Valium. Simmons states that they later picked up Fillmore's Mustang and took Simmons' truck to his mother's house, and bought another six-pack of beer while in the Mustang.
Simmons recalls Fillmore squealing his tires and being pulled over by Officer Schraw at approximately 3:50 p.m. Simmons states that at the time they were stopped, they had each consumed at least four or five beers, two Valiums, and smoked marijuana. Simmons claims that when Fillmore was in the police cruiser, he waited in the Mustang for awhile, then went to the police cruiser, got into the back seat and closed the door. He further claims that he began to bang on the plexiglass partition, situated between the back and front seats of the cruiser, demanding to be let out. Simmons states that someone let him out of the cruiser and that he then went between two buildings and urinated.
Upon returning to Fillmore's Mustang, Simmons states that Officer Schraw asked him whether he could drive, to which Simmons replied in the affirmative. No attempt was made to determine Simmons' sobriety even though he claims to have smelled of alcohol and to have been acting unusual. Simmons does not recall being asked for his driver's license or insurance information by Officer Schraw.
Simmons further recollects that after being released by the officer, he and Fillmore drove to Benjamin Shiltz's house, where they consumed more beer and changed positions in the vehicle so that Fillmore was once again driving the Mustang. Also, during the drive to Benjamin Shiltz's house, Simmons and Fillmore consumed more beer. Benjamin Shiltz died in the one-car wreck that occurred at approximately 4:55 p.m. Simmons states that after the wreck, his blood-alcohol level was .13 percent and that he tested positive for Valium and marijuana. Simmons further states that Fillmore's blood-alcohol level was .11 percent and that he tested positive for Valium.
Because the January 17, 1997 complaint contained federal causes of action, appellees removed the case to the United States District Court for the Southern District of Ohio, Western Division. On June 10, 1998, the federal court granted appellees' motion for summary judgment on the federal claims and dismissed the state law claims without prejudice.
On March 2, 1999, appellant timely refiled her state law claims against appellees in the Highland County Court of Common Pleas. Appellees filed a motion for summary judgment on May 19, 1999, on the basis that both appellees were entitled to immunity pursuant to R.C. 2744.01 et seq. A memorandum contra to the motion was filed on June 7, 1999, and a reply was filed by appellees on June 15, 1999.
The trial court granted the motion for summary judgment on June 14, 2000, finding that the police department was immune from liability under R.C. 2744.02(A), 2744.03(A)(3), and 2744.03(A)(5) and that Officer Shraw was immune pursuant to R.C. 2744.03(A)(3) and (5).
Appellant timely filed a notice of appeal and presents the following assignment of error for our review.
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEE GREENFIELD POLICE DEPARTMENT AND APPELLEE GARY SCHRAW WHEN GENUINE ISSUES OF MATERIAL FACTS EXIST AS TO WHETHER OR NOT APPELLEES ARE IMMUNE FROM LIABILITY PURSUANT TO R.C. § 2744.02
AND § 2744.03.
A de novo review of the record must be conducted as we are reviewing the trial court's granting of summary judgment pursuant to Civ.R. 56. SeeRenner v. Derrin Acquisition Corp. (1996), 111 Ohio App.3d 326,676 N.E.2d 151.
As the Supreme Court of Ohio has stated
 Under Civ.R. 56, summary judgment is proper when "(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party."
Welco Industries, Inc. v. Applied Cos. (1993), 67 Ohio St.3d 344, 346,617 N.E.2d 1129, 1132 (citations omitted). Therefore, we give no deference to the judgment of the trial court. See Renner, supra.
Since this case involves the potential liability of two separate parties — the Greenfield Police Department and Officer Schraw — we will separately address the granting of summary judgment in favor of each party.
I. Greenfield Police Department
The Supreme Court of Ohio has stated that "The Political Subdivision Tort Liability Act, as codified in R.C. Chapter 2744, sets forth a three-tiered analysis for determining whether a political subdivision is immune from liability." Cater v. City of Cleveland (1998),83 Ohio St.3d 24, 697 N.E.2d 610. R.C. 2744.02(A) first presents the general rule that political subdivisions are not liable in damages for a person's personal injuries or death.
 (A)(1) For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.
R.C. 2744.02(A)(1).
Appellee Greenfield Police Department is undoubtedly a "political subdivision" as defined by R.C. 2744.01(F) and performs "governmental functions" as defined by R.C. 2744.01(C)(2)(a). As such, the police department is afforded the immunity from liability provided through R.C.2744.02(A)(1).
The immunity granted by R.C. 2744.02(A)(1) is on its face subject to five exceptions delineated in R.C. 2744.02(B). See Cater, supra. Once immunity is established, the second-tier of the analysis involves determining whether any of these five exceptions apply. Appellant contends that the exception established in R.C. 2744.02(B)(3) applies to this case. Former R.C. 2744.02(B)(3) provided that
 (B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
* * *
 (3) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to persons or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, and free from nuisance, * * *.
R.C. 2744.02(B)(3).
If any of these exceptions applies, the third tier of the analysis involves a determination of whether one or more of the defenses contained in R.C. 2744.03 apply, thereby reinstating immunity to the political subdivision. See Cater, supra. The police department contends that even if it is subject to the exception in R.C. 2744.02(B)(3), the defenses contained in R.C. 2744.03(A)(3) and (5) act to reinstate immunity. R.C.2744.03 reads in pertinent part:
 (A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by an act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted:
* * *
 (3) The political subdivision is immune from liability if the action or failure to act by an employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.
* * *
 (5) The political subdivision is immune from liability if the injury, death, or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.
R.C. 2744.03.
We now turn to appellant's contention that the exception established in R.C. 2744.02(B)(3) applies in the case sub judice. R.C. 2744.02(B)(3) states that a political subdivision is liable for injuries caused by its failure to maintain its roadways free from nuisance. The ultimate issue in the case at bar is whether an impaired driver, operating a vehicle on the roadway, constitutes a nuisance for purposes of R.C. 2744.02(B)(3).
First, we look to the Ohio Revised Code for a determination of what constitutes a "nuisance." In R.C. 3767.01, "nuisance" is defined, for "all sections of the Revised Code relating to nuisances" as "that which is defined and declared by statutes to be such * * *." The Code itself contains no further guidance as to the definition of "nuisance," which, when applied to this case, establishes whether an alleged drunk driver can constitute a nuisance in this context.
However, what can constitute a nuisance for the purposes of R.C.2744.02(B)(3) has been further illumined by the Supreme Court of Ohio. For instance, in its first opportunity to interpret R.C. 2744.02(B)(3), the Supreme Court of Ohio held that "a permanent obstruction to visibility, within the right-of-way, which renders regularly traveled portions of the highway unsafe for the usual and ordinary course of travel, can be a nuisance for which a political subdivision may be liable under R.C. 2744.02(B)(3)." Manufacturer's Nat'l Bank v. Erie Cty. Rd.Comm'n (1992), 63 Ohio St.3d 318, 587 N.E.2d 819, paragraph one of the syllabus. In Manufacturer's, the court dealt with corn growing in the right-of-way of the highway, which obstructed the view of drivers entering an intersection.
In rendering its judgment, the court relied on cases interpreting a statute that imposes a similar duty upon political subdivisions, to wit: R.C. 723.01. The Manufacturer's court discussed Fankhauser v. Mansfield
(1969), 19 Ohio St.2d 102, 249 N.E.2d 789, where the court held that a malfunctioning traffic signal can be a nuisance to orderly urban street traffic. The Supreme Court of Ohio also discussed Robert Neff Sons v.Lancaster (1970), 21 Ohio St.2d 31, 254 N.E.2d 693, where the court determined that an overhanging tree limb impeding ordinary traffic flow could be a nuisance within the meaning of R.C. 723.01. In Williams v.Pavlovich (1989), 45 Ohio St.3d 179, 543 N.E.2d 1242, the court held, "Pursuant to R.C. 723.01, illegally parked cars located on the side of a highway, which contribute generally to traffic congestion, do not constitute a nuisance giving rise to municipal liability." Id., paragraph one of the syllabus.
In Franks v. Lopez (1994), 69 Ohio St.3d 345, 632 N.E.2d 502, the Supreme Court of Ohio held that a township's alleged failure to maintain signage already in place may constitute an actionable nuisance claim. InFranks, however, the court refused to expand its nuisance definition to include design and construction defects and the failure to erect signage.
In accordance with the aforementioned decisions, this Court has held that design defects in roads do not constitute a nuisance but that water flowing across a roadway due to an improperly maintained drainage system is as much an impediment to the safe flow of traffic as a malfunctioning traffic light. See Engle v. Ogburn (1999), Washington App. No. 99CA23, unreported; Helton v. Scioto Bd. of County Commrs. (1997),123 Ohio App.3d 158, 703 N.E.2d 841; Isreal v. Jefferson Twp. Bd. ofTrustees (Dec. 10, 1990), Montgomery App. No. 12071, unreported. However, as appellant points out, there is no case law finding that an illegal activity such as drunk driving is a nuisance pursuant to R.C.2744.02(B)(3).
In Kasunic v. City of Euclid (1989), 43 Ohio St.3d 603,538 N.E.2d 408, the Supreme Court of Ohio denied jurisdiction to an appeal by the plaintiff involving a municipality's liability under R.C. 723.01. There, the defendant-city was aware of individuals hitting golf balls in a public park where such activity was prohibited. The plaintiff alleged that the city's failure to prevent this activity, which resulted in someone's injury, was a nuisance.
Although drunk driving is a terrible plague upon the roadways of our state and country, we decline to extend the definition of "nuisance" so far as to apply to the facts in the case sub judice. The Supreme Court of Ohio succinctly stated that the requirements that political subdivisions "keep their streets, highways and public grounds open, in repair and free from nuisance, embraces only those conditions affecting the actualphysical conditions existing in or on highways, streets and public groundsthemselves." (Emphasis added.) Williams, 45 Ohio St.3d at 181,543 N.E.2d at 1245.
Appellant relies on language in Franks, supra, which states that, in determining what can be a nuisance, "the proper focus should be on whether a condition exists within the township's control that creates a danger for ordinary traffic on the regularly traveled portion of the road." Id. at 348, 632 N.E.2d at 505. This statement by the Supreme Court, however, was given in the context of ruling on whether design defects could be a nuisance for purposes of municipal liability under R.C. 2744.02(B)(3), and as such, is distinguishable from the case at bar.
Accordingly, we find: the "nuisance" exception in R.C. 2744.02(B)(3) does not apply to the case at bar; Appellee Greenfield Police Department is, as a matter of law, immune from liability under R.C. 2744.02(A)(1); and, summary judgment was properly granted in favor of the police department. Therefore, we affirm the judgment of the trial court as to Appellee Greenfield Police Department.
II. Officer Schraw
The sole remaining issue is whether Appellee Schraw may be held liable for the deceased's death, or whether he is also cloaked with immunity from liability in this matter. Appellee Schraw first contests whether a case of negligence has even been established and further argues that even if it has been so established, he is entitled to immunity. The parties specifically raise two issues concerning Officer Schraw's liability: causation and immunity. We will address each of these issues seriatim.
A. Causation
"To establish a cause of action in negligence, plaintiff must show duty, breach of that duty, and damage or injury as a proximate result of the breach." Power v. Boles (1996), 110 Ohio App.3d 29, 33, 673 N.E.2d 617,619.
In order to survive a motion for summary judgment, appellant is required to present evidence that, when construed in her favor, could establish the causal link between the officer's actions or failure to act and the death of Benjamin Shiltz. In the case sub judice, appellant has presented evidence which, when construed in her favor, could allow reasonable minds to reach different conclusions as to whether Officer Schraw's actions, or the lack thereof, constituted a cause of the death of appellant's son.
In Anderson v. St. Francis-St.George Hospital (1996) 77 Ohio St.3d 82,671 N.E.2d 225, the Supreme Court of Ohio explained causation as follows:
 Where a breach of duty has occurred, liability will not attach unless there is a causal connection between the conduct * * * and the loss suffered * * *.
 The standard test for establishing causation is the sine qua non or "but for" test. Thus, a defendant's conduct is a cause of the event (or harm) if the event (or harm) would not have occurred but for that conduct; conversely, the defendant's conduct is not the cause of the event (or harm) if the event (or harm) would have occurred regardless of the conduct. Prosser Keeton, Law of Torts (5 Ed. 1984) 266.
Id. at 84-85, 671 N.E.2d at 227. The court further stated,
 * * * the standard test for establishing causation is the "but for" test. "As a rule regarding legal responsibility, at most this must be a rule of exclusion: if the event would not have occurred `but for' the defendant's negligence, it still does not follow that there is liability, since other considerations remain to be discussed and may prevent liability. It should be quite obvious that, once events are set in motion, there is, in terms of causation alone, no place to stop." Accordingly, an act is not regarded as a cause of an event if the particular event would have occurred without the doing of the act.
Id. at 86, 671 N.E.2d at 228, quoting Prosser Keeton, Law of Torts (5 Ed. 1984) 265, Section 41 (citations omitted).
Therefore, in order for appellant's claim to survive a motion for summary judgment, she must produce affirmative evidence that Officer Schraw's actions or failure to act were the cause in fact and constitute a proximate cause of the deceased's death. See Stibley v. Zimmerman
(Aug. 26, 1998), Athens App. No. 97CA51, unreported. A negligent act will only be the proximate cause of those injuries that are the natural and probable consequence of that act. Further, a party will only be liable for injuries that should have been foreseen or anticipated by the wrongdoer to likely flow from his actions or failure to act. See id.; see, also,Mussivand v. David (1989), 45 Ohio St.3d 314, 544 N.E.2d 265; Jeffers v.Olexo (1989), 43 Ohio St.3d 140, 539 N.E.2d 614; Piqua v. Morris (1918),98 Ohio St. 42, 120 N.E. 300; Harris v. Ohio Dept. of Transp. (1992),83 Ohio App.3d 125, 614 N.E.2d 779.
In Stibley, supra, fn. 4, we noted that since proximate cause is a question of fact, "summary judgment on the issue of proximate cause ordinarily is inappropriate." See Keister v. Park Centre Lanes (1981),3 Ohio App.3d 19, 443 N.E.2d 532; see, also, Whiteleather v. Yosowitz
(1983), 10 Ohio App.3d 272, 274, 461 N.E.2d 1331, 1335.
However, appellee argues that the doctrine of collateral estoppel applies to the case at bar, thereby preventing appellant from now litigating the issue of proximate cause. Appellee relies on the criminal conviction of James Fillmore for aggravated vehicular homicide to support this position. This criminal conviction stems from the automobile wreck, which killed Benjamin Shiltz. See State v. Fillmore (Nov. 26, 1996), Highland C.P. No. 96-CR-064, unreported.
A determination of whether the doctrine of res judicata or collateral estoppel applies is a question of law, which an appellate court must resolve without deference to the decision of the lower court. See Ray v.Stepp (Aug. 4, 1995), Jackson App. No. 95CA758, unreported; J.R. Mason,Inc. v. S. Bloomfield (Apr. 4, 1995), Pickaway App. No. 94CA13, unreported; In re Estate of Frazier (Feb. 16, 1995), Ross App. No. 93CA1973, unreported.
Appellee states that one of the elements required to be proven in order for a conviction for aggravated vehicular homicide to lie is that the death of the victim was proximately caused by the actions of the accused. See State v. Vaught (1978), 56 Ohio St.2d 93, 94-95,382 N.E.2d 213, 214 (discussing R.C. 2903.07). Appellee's position is that Fillmore's actions have already been proven to be the proximate cause of Shiltz's death, and appellant is precluded from now trying to prove that Officer Schraw's alleged failure to act was the proximate cause of her son's death.
There are several serious flaws with appellee's argument. First, and foremost, it presumes that there can only be one proximate cause of the deceased's death. The Supreme Court of Ohio stated:
 It is a well-established principle of tort law that an injury may have more than one proximate cause. See Prosser and Keeton, Law of Torts (5 Ed. 1984) 266-268, Section 41; 2 Restatement of the Law 2d, Torts (1965) 432, Section 433; 1B Larson, Law of Workers' Compensation (1991) 7-612 to 7-941, Section 41.64; 1 Ohio Jury Instructions (1988) 183, Section 11.10 ("There may be more than one proximate cause."). Ohio case law also supports this fundamental tenet of tort law: "In Ohio, when two factors combine to produce damage or illness, each is a proximate cause." Norris v. Babcock Wilcox Co. (1988), 48 Ohio App.3d 66, 67, 548 N.E.2d 304, 305.
Murphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585, 587-588,575 N.E.2d 828, 830. Officer Schraw's actions or failure to act and James Fillmore's actions could both be proximate causes of the decedent's death, and the issue of whether the officer's actions were a proximate cause of that death has yet to be litigated. Therefore, the doctrine of collateral estoppel does not apply in this context, and we need not further address it.
Appellee also argues that the criminal actions of driving while intoxicated and aggravated vehicular homicide are superseding, intervening causes of decedent's death.
 Whether an intervening act breaks the causal connection between negligence and injury, thus relieving one of liability for his negligence, depends upon whether that intervening cause was a conscious and responsible agency which could or should have eliminated the hazard, and whether the intervening cause was reasonably foreseeable by the one who was guilty of the negligence. (Paragraph two of the syllabus of Thrash v. U-Drive-It Co. [1953], 158 Ohio St. 465 [110 N.E.2d 419], approved and followed.)
Cascone v. Herb Kay Co. (1983), 6 Ohio St.3d 155, 451 N.E.2d 815, paragraph one of the syllabus. The Supreme Court of Ohio further held that
 Where the facts are such that reasonable minds could differ as to whether the intervening cause was a conscious and responsible agency which could or should have eliminated the hazard, whether the intervening act or cause constituted a concurrent or superseding cause, and whether the intervening cause was reasonably foreseeable by the original party guilty of negligence, present questions for submission to a jury which generally may not be resolved by summary judgment. (Mudrich v. Standard Oil Co. [1950], 153 Ohio St. 31 [90 N.E.2d 859], approved and followed.)
Cascone, at paragraph two of the syllabus.
The Mudrich court, whose decision was approved and followed by the Supreme Court of Ohio in Cascone, further stated that
 Whether an intervening act breaks the causal connection between negligence and injury depends upon whether that intervening cause was reasonably foreseeable by the one who was guilty of the negligence. If an injury is the natural and probable consequence of a negligent act and it is such as should have been foreseen in the light of all the attending circumstances, the injury is then the proximate result of the negligence. It is not necessary that the defendant should have anticipated the particular injury. It is sufficient that his act is likely to result in an injury to someone.
Mudrich v. Standard Oil Co. (1950), 153 Ohio St. 31, 90 N.E.2d 859
(citations omitted).
In the case sub judice, the facts surrounding the officer's stop of Fillmore and Simmons are not clear and unambiguous. Therefore, more than one conclusion can reasonably be drawn from those facts in regard to whether the officer's actions were a proximate cause of the decedent's death, whether the damages which resulted were foreseeable to the officer, and whether the actions of Fillmore and Simmons after the stop were also foreseeable to the officer. See Schutt v. Rudolph-Libbe, Inc. (Mar. 31, 1995), Wood App. No. WD-94-063, unreported. This issue should be presented to the jury for resolution.
B. Employee Immunity
Appellee Schraw contends that, even if causation can be established, as an employee of a political subdivision, he is entitled to immunity and, therefore, not liable to appellant.
An employee of a political subdivision is totally immune from liability pursuant to R.C. 2744.03(A)(6) unless, as alleged in this case, "[h]is acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner," under R.C. 2744.03(A)(6)(b). Thus, in order for Officer Schraw to be exposed to liability, the issue becomes whether he acted with malicious purpose, in bad faith, or in a wanton or reckless manner. See Fabrey v. McDonald Village Police Department (1994),70 Ohio St.3d 351, 639 N.E.2d 31.
 * * * an individual acts in a "reckless" or "willful and wanton" manner if he or she (1) perversely disregards a known risk, or (2) acts or intentionally fails to act when he or she has the duty to the other to do so, knowing or having reason to know of facts which would lead a reasonable person to realize not only that his or her conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his or her conduct negligent. Thompson v. McNeill (1990), 53 Ohio St.3d 102, 104-105, 559 N.E.2d 705, quoting Restatement of the Law 2d, Torts (1965) 587, Section 500; Poe v. Hamilton (1990), 56 Ohio App.3d 137, 138, 565 N.E.2d 887.
Cole v. Crowthers (Oct. 12, 1994), Hamilton App. No. C-930767,unreported, quoting Thacker v. Franklin County (June 21, 1994), Franklin App. Nos. 94APE01-10 and 94APE01-11, unreported.
Appellant contends that Officer Schraw acted recklessly when he allowed Simmons and Fillmore to continue driving after the officer had that initial contact with them. Civ.R. 56 requires that we construe all the evidence in favor of appellant, the nonmoving party. See WelcoIndustries, Inc., supra. Appellees' motion for summary judgment was supported by the deposition of Officer Schraw and the transcript of the trial testimony of Floyd Simmons from the criminal prosecution of James Fillmore. Appellant included two affidavits with her memorandum in opposition to appellees' motion for summary judgment, to wit: affidavits of Simmons and Alfred Staubus, Pharm.D., Ph.D.
Simmons states in his affidavit that at the time he and Fillmore were stopped by Officer Schraw, Fillmore was driving and they each had consumed at least four or five beers, two Valiums, and smoked marijuana. Simmons further asserts in his affidavit that he was acting out of the ordinary by getting into the backseat of the police cruiser, demanding to be let out by banging on the partition glass, and then urinating between two nearby buildings upon being freed from the cruiser.
Simmons also asserts that, when he returned to Fillmore's car, Officer Schraw asked him if he could drive, to which Simmons responded in the affirmative. According to Simmons, although he smelled of alcohol, no effort was made to determine his sobriety and he did not recall being asked for his license or insurance information. After being released by the officer at approximately 4:00 p.m., Simmons and Fillmore changed positions in the vehicle at the home of the decedent so that Fillmore was once again driving. Simmons stated that subsequent to the accident, his blood-alcohol level was .13 percent and Fillmore's blood-alcohol level was .11 percent. In addition, according to Simmons' affidavit, both he and Fillmore tested positive for Valium, and the affiant also tested positive for marijuana.
Construing all the evidence presented in favor of appellant, it is apparent that reasonable minds could reach different conclusions regarding whether Officer Schraw acted recklessly, thereby exposing himself to liability for damages. We find that reasonable minds could conclude from Simmons' testimony that he was in fact intoxicated, smelled of alcohol, and was acting out of the ordinary, thereby making Officer Schraw aware of "facts which would lead a reasonable person to realize not only that his * * * conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his * * * conduct negligent." Cole, supra.
Appellant argues that the affidavit of Dr. Alfred Staubus is inadmissible for the purposes of summary judgment because it does not comply with the requirements of Civ.R. 56(E), Evid.R. 702, 703, and 705. However, since we have already found that Simmons' affidavit is sufficient to create a question of fact as to whether Officer Schraw acted recklessly, we need not address the admissibility of the Staubus affidavit, and decline to do so.
Appellant has presented evidence, which when construed in her favor, could lead reasonable minds to conclude the following: 1) the officer acted recklessly by failing to conduct sobriety tests on Fillmore and Simmons at the initial stop, and/or by failing to further prevent Fillmore and Simmons from driving that night; and, 2) his failure to do so was a proximate cause of the wreck that killed Benjamin Shiltz. Thus, summary judgment in favor of Officer Schraw was inappropriate. Accordingly, we reverse the judgment of the trial court as to Appellee Schraw.
Accordingly, the judgment of the trial court is AFFIRMED IN PART, REVERSED IN PART, and REMANDED for further proceedings not inconsistent with this opinion.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART AND REVERSED INPART and the cause remanded to the trial court for further proceedings consistent with this opinion, costs herein taxed equally between the parties.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the HIGHLAND COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of the entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, J., Concurs in Judgment and Opinion as to Assignment of Error I; Concurs in Judgment Only as to Assignment of Error II.
Abele, P.J., Concurs in Judgment and Opinion as to Assignment of Error I; Dissents as to Assignment of Error II.