[Cite as *Henry Cty. Dog Warden v. Henry Cty. Humane Soc.*, 2016-Ohio-7541.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HENRY COUNTY

HENRY COUNTY DOG WARDEN,

    PLAINTIFF-APPELLEE,           CASE NO.  7-16-06

    v.

HENRY COUNTY HUMANE SOCIETY,      O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Napoleon Municipal Court
Trial Court No. 16CRB0025

Judgment Affirmed

Date of Decision:   October 31, 2016

APPEARANCES:

    *Alan J Lehenbauer* for Appellant

**SHAW, P.J.**

{**¶1**} Defendant-appellant, Henry County Humane Society ("Humane Society"), appeals the March 16, 2016 judgment entry issued by the Napoleon Municipal Court affirming the designation of a dog named "Bruiser" as a "dangerous dog" by plaintiff-appellee, Henry County Dog Warden ("Dog Warden"). On appeal, the Humane Society argues the trial court erred in finding (1) that it had subject-matter jurisdiction over the case, (2) that the Dog Warden complied with the notice requirements of R.C. 955.222(B), and (3) that the Dog Warden met its burden in proving by clear and convincing evidence that Bruiser is a "dangerous dog" under R.C. 955.11(A)(1)(a).

*Facts and Procedural History*

{**¶2**} On January 5, 2016, the Dog Warden filed a "Notice of Designation" in the Napoleon Municipal Court designating Bruiser, a nine-year-old pit bull mix, as a "dangerous dog," and identifying the Henry County Humane Society as Bruiser's owner. Beth Spurgeon, Chief Henry County Dog Warden, filed a written statement with the Notice outlining two separate incidents in which "Bruiser" caused injury to a person without provocation.

{**¶3**} The first incident occurred on or about December 7, 2015 and took place in Defiance County after Bruiser had been adopted from the Humane Society and had lived in the adoptive home for approximately six weeks. Bruiser either

scratched or bit a four-year-old boy in the home leaving "marks," but an otherwise minor injury, on the child's cheek. Bruiser was immediately returned to the Humane Society and exchanged for a smaller dog. The child's mother did not seek medical attention for her son.

{¶4} On December 10, 2015, Bruiser was in another home this time in Henry County on a "trial" basis. Bruiser had been in the home less than twenty-four hours when he bit a four-year-old boy in the face while the boy was visiting the home. The injury in this incident was more significant prompting the child's mother to take him to the emergency room. The child received six stitches under his left eye. Bruiser was again returned to the Humane Society. In her written statement dated January 4, 2016, Chief Dog Warden Spurgeon also stated that "Bruiser is currently being housed at the humane society." (Doc. No. 1). Spurgeon further indicated that "Nicole Patterson, Director of the Henry County Humane Society was issued copies of all paper work regarding the designation of this dog on January 4, 2016." (*Id.*)

{¶5} On January 14, 2016, the Humane Society filed a letter "requesting a hearing on behalf of Bruiser," and stating that it disagreed with the Dog Warden's designation of Bruiser as a "dangerous dog."

{¶6} On February 29, 2016, the trial court held a hearing on the Dog Warden's "dangerous dog" designation. The prosecutor presented the testimony of four witnesses, including the four-year-old boy injured in the second incident, who

was later determined by the court not competent to testify. Counsel for the Humane Society argued at the hearing that it was not properly served with notice of the designation by the Dog Warden and that the Dog Warden failed to prove that the Humane Society was the owner of Bruiser. On the same day, the trial court issued a "judgment entry" memorializing that the hearing had taken place, including the number of witnesses heard from and the exhibit admitted, and stating that it was taking the matter under consideration.

{¶7} On March 16, 2016, the trial court issued a judgment entry finding no merit in the Humane Society's arguments. The trial court then set forth its reasons for upholding the Dog Warden's designation of Bruiser as a "dangerous dog."

{¶8} The Humane Society filed this appeal, asserting the following assignments of error.

### ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT DID NOT IDENTIFY THE OWNER, KEEPER AND/OR HARBORER OF THE DOG AND THEREBY LACKED SUBJECT MATTER JURISDICTION OVER THE DESIGNATION OF A DANGEROUS DOG.**

### ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT ERRED IN FAILING TO FIND THAT THE DOG WARDEN DID NOT COMPLY WITH R.C. 955.222.**

### ASSIGNMENT OF ERROR NO. III

**THE TRIAL COURT'S DECISION TO CLASSIFY THE DOG BRUISER AS A DANGEROUS DOG PURSUANT TO R.C.**

**955.11(A)(1)(a)(i) AND R.C. 955.222, WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

*Relevant Law*

**{¶9}** Section 955.11(A)(1) of the Revised Code defines a "dangerous dog" as follows:

> **(a) "Dangerous dog" means a dog that, without provocation, and subject to division (A)(1)(b) of this section, has done any of the following:**
>
> > **(i) Caused injury, other than killing or serious injury, to any person;**
> >
> > **(ii) Killed another dog;**
> >
> > **(iii) Been the subject of a third or subsequent violation of division (C) of section 955.22 of the Revised Code.**
>
> **(b) "Dangerous dog" does not include a police dog that has caused injury, other than killing or serious injury, to any person or has killed another dog while the police dog is being used to assist one or more law enforcement officers in the performance of their official duties.**

**{¶10}** The statute further defines "without provocation" to mean "that a dog was not teased, tormented, or abused by a person, or that the dog was not coming to the aid or the defense of a person who was not engaged in illegal or criminal activity and who was not using the dog as a means of carrying out such activity." R.C. 955.11(A)(7). Once a dog is designated a "dangerous dog," the owner, keeper, or harborer of the dog must comply with certain restrictions and directives, including obtaining liability insurance and

a dangerous dog registration certification from the county auditor. *See* R.C. 955.22(E).

{¶11} Section 955.222 of the Revised Code was enacted in 2012 by the legislature to provide an owner, keeper, or harborer of a "dangerous dog" with a meaningful review of the dog warden's unilateral decision to designate the dog as dangerous. *See State v. Cowan*, 103 Ohio St.3d 144, 2004-Ohio-4777, ¶ 13 (finding "[former] R.C. 955.22 violates procedural due process insofar as it fails to provide dog owners a meaningful opportunity to be heard on the issue of whether a dog is "vicious" or "dangerous" as defined in R.C. 955.11(A)(1)(a) and (A)(4)(a)"). Specifically, R.C. 955.222(B) states that:

> **If a person who is authorized to enforce this chapter has reasonable cause to believe that a dog in the person's jurisdiction is a nuisance dog, dangerous dog, or vicious dog, the person shall notify the owner, keeper, or harborer of that dog, by certified mail or in person, of both of the following:**
>
> **(1) That the person has designated the dog a nuisance dog, dangerous dog, or vicious dog, as applicable;**
>
> **(2) That the owner, keeper, or harborer of the dog may request a hearing regarding the designation in accordance with this section. The notice shall include instructions for filing a request for a hearing in the county in which the dog's owner, keeper, or harborer resides.**

{¶12} Once an owner, keeper, or harborer receives notice of the designation, the statute permits them to request a hearing on the matter.

**(C) If the owner, keeper, or harborer of the dog disagrees with the designation of the dog as a nuisance dog, dangerous dog, or vicious dog, as applicable, the owner, keeper, or harborer, not later than ten days after receiving notification of the designation, may request a hearing regarding the determination. The request for a hearing shall be in writing and shall be filed with the municipal court or county court that has territorial jurisdiction over the residence of the dog's owner, keeper, or harborer. At the hearing, the person who designated the dog as a nuisance dog, dangerous dog, or vicious dog has the burden of proving, by clear and convincing evidence, that the dog is a nuisance dog, dangerous dog, or vicious dog.**

**The owner, keeper, or harborer of the dog or the person who designated the dog as a nuisance dog, dangerous dog, or vicious dog may appeal the court's final determination as in any other case filed in that court.**

R.C. 955.222(C).

### *Standard of Review*

{¶13} "[B]ecause the statute essentially calls for a *de novo* hearing by a municipal court or county court upon request by a dog owner, we find an appellate court's standard of review on a manifest weight challenge in the present context is the same as in a civil case." *Spangler v. Stark Cty. Dog Warden*, 9th Dist. Stark. No. 2013 CA 00023, 2013-Ohio-4774, ¶ 18. "Our standard of reviewing the sufficiency of the evidence in a civil case is whether, after viewing the evidence in a light most favorable to the prevailing party, the judgment is supported by competent and credible evidence." *Edwards v. Knox Cty. Dog Warden*, 5th Dist. Knox Nos. 14CA15, 14CA17, 2015-Ohio-1320, ¶ 9, quoting *Moran v. Gaskella*,

5th Dist. Knox. No.2011-CA–21, 2012-Ohio-1158, ¶ 12, citing *Technical Construction Specialties v. Cooper*, 8th Dist. Cuyahoga No. 96021, 2011-Ohio-5252.

{¶14} The Ohio Supreme Court has recently clarified and explained the standard of review to be applied when assessing the manifest weight of the evidence in a civil case. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179. In *Eastley*, the court held that the standard of review for the manifest weight of the evidence established in *State v. Thompkins*, 78 Ohio St.3d 380 (1997), is also applicable in civil cases. *Id.* at ¶ 17–19. Consequently, when reviewing the weight of the evidence, our analysis must determine whether the trial court's judgment was supported by the greater amount of credible evidence, and whether the plaintiff met its burden of persuasion, which in this instance is by clear and convincing evidence. *Eastley* at ¶ 19.

{¶15} The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 104 (1986).

{¶16} We are mindful that, in a determinative hearing such as the one in the case sub judice, "the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). It follows that, "[i]f the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Id*. at fn. 3, quoting 5 Ohio Jurisprudence 3d. Appellate Review, Section 60, at 191-92 (1978).

## *First Assignment of Error*

{¶17} In its first assignment of error, the Humane Society claims that the trial court lacked subject-matter jurisdiction to hear this case because the trial court failed to make a factual finding identifying the Humane Society as the "owner, keeper, or harborer" of Bruiser, as referred to in R.C. 955.222. The Humane Society attempts to obfuscate the issue by pointing to the fact that Bruiser was in the possession of other individuals when the two incidents occurred and, thus, there were other former owners, keepers, or harborers involved in this case.

{¶18} However, in reviewing R.C. 955.222 it is imperative to note that the right to request a hearing and initiate procedural due process is conferred to the current owner, keeper, or harborer of a dog designated a "dangerous dog." *See State*

*v. Maynard*, 3d Dist. Henry No. 7-14-11, 2015-Ohio-51, ¶ 17. It is the current owner, keeper, or harborer who will have to comply with the restrictions set forth in R.C. 955.22 and will be subject to criminal prosecution and/or the potential loss of property—e.g., the destruction of the dog, if they fail to do so. The previous owners, keepers, or harborers of Bruiser in this case, will not face any of these consequences because they surrendered Bruiser to the Humane Society after the two incidents occurred and no longer have a property interest in the dog. Therefore, they cannot be considered an owner, keeper, or harborer for purposes of R.C. 955.222.

{¶19} Moreover, R.C. 955.222 clearly contemplates that only an owner, keeper, or harborer has the right to request a hearing. In other words, an owner, keeper, or harborer is the only party who has *standing* to request judicial review of the dog warden's unilateral designation of a dog as a "dangerous dog," *and* only an owner, keeper, or harborer may *appeal* a court's final determination on a dangerous dog designation to this Court. *See* R.C. 955.222(C). To this end, the Humane Society asserts a precarious position on appeal because if they are not the owner, keeper or harborer of Bruiser, then they were not the proper party to request a hearing on Bruiser's behalf and they do not have standing to bring this appeal. *See Maynard*, *supra*. If this is the case, then Bruiser's designation as a "dangerous dog"

stands without judicial review because the procedural due process set forth in R.C. 955.222 was not invoked by the proper party and this appeal must be dismissed.

{¶20} However, it is clear the Humane Society does not want us to take this stance as they are advocating for reversal of the trial court's decision to uphold the Dog Warden's designation. Instead, the Humane Society asserts that either (1) the Dog Warden should have presented sufficient evidence to prove that the Humane Society was in fact the current owner, keeper, or harborer of Bruiser or (2) the trial court was required to make a finding of fact identifying them as the owner, keeper, or harborer, which it did not do. We do not find anything in the statutory language to support the Humane Society's position in this respect. Rather, we believe that when the Humane Society invoked the procedural due process safeguards under R.C. 955.222 by requesting a hearing regarding Bruiser's designation as a "dangerous dog," citing that it disagreed with the Dog Warden's determination, it *represented* to the trial court that it was the current owner, keeper, or harborer of Bruiser and thus became the proper party to the challenge the designation before the court, at least for purposes of this litigation. *See* R.C. 955.222(C).

{¶21} It is further noteworthy that, in addition to taking action consistent with an owner, keeper, or harborer throughout the trial court proceeding by requesting the hearing under R.C. 955.222(C), hiring counsel, and sending the Director of Shelter Operations to the hearing, the Humane Society did not dispute

its ownership status of Bruiser nor did it contest the Dog Warden's identification of the Humane Society as Bruiser's owner in the Notice of Designation, the filing of which initiated this case. As a result, the only evidence in the record on this issue identifies the Humane Society as the owner, keeper, or harborer of Bruiser pursuant to R.C. 955.222(C). Accordingly, we find the Humane Society has presented us with no compelling reason to find that the trial court lacked subject-matter jurisdiction to review this case. The Humane Society's first assignment of error is overruled.

### *Second Assignment of Error*

{¶22} In its second assignment of error, the Humane Society argues that the trial court erred in finding that the Dog Warden complied with the notice requirements in R.C. 955.222(B). The Humane Society makes two arguments under this assignment of error. First, it claims that the Dog Warden failed to serve the prior owners, keepers, or harborers of Bruiser—i.e., the people who were in possession of Bruiser when the two incidents underlying this action occurred.[1] Given our discussion in the prior assignment of error, we simply do not find this argument persuasive or relevant to the Humane Society's position on appeal. Second, the Humane Society claims the record fails to affirmatively show that the Dog Warden notified it of the designation by certified mail or in person. The

---

[1] We note that both of these individuals were called as witnesses by the Dog Warden, were present at the hearing, and did not raise any claims or rights on Bruiser's behalf as prior owners, keepers, or harborers.

Humane Society points to a lack of "green card" in the record indicating service by certified mail or any testimony establishing personal service was made.

{¶23} The record demonstrates that Chief Dog Warden Spurgeon filed a statement with the "Notice of Designation" stating that "Nicole Patterson, Director of the Henry County Humane Society was issued copies of all paper work regarding the designation of this dog on January 4, 2016." (Doc No. 1). The Humane Society does not dispute this fact. Moreover, the record establishes that the Humane Society received sufficient notice of the designation to be able to request a hearing contesting the Dog Warden's designation within the requisite ten-day time period and to defend its position at the hearing. There is nothing in the record to suggest that the procedural due process requirements were not accorded to the Humane Society in this case. Accordingly, we find no merit in the Humane Society's argument that the Dog Warden failed to comply with R.C. 955.222(B). On this basis, we overrule the second assignment of error.

### *Third Assignment of Error*

{¶24} In its third assignment of error, the Humane Society argues that the trial court's decision to designate Bruiser a "dangerous dog" was against the manifest weight of the evidence. As previously mentioned, a "dangerous dog" is defined by the Revised Code as "a dog that, without provocation,* * * has done any of the following: (i) Caused injury, other than killing or serious injury, to any

person; (ii) Killed another dog; (iii) Been the subject of a third or subsequent violation of division (C) of section 955.22 of the Revised Code." R.C. 955.11(A)(1)(a). The following evidence was presented by the Dog Warden at the hearing in support of its "dangerous dog" designation.

*First Incident*

**{¶25}** Brandy McClory testified that she adopted Bruiser from the Humane Society in October of 2015 and took Bruiser to her home in Defiance, Ohio. She explained that she returned Bruiser to the Humane Society in the beginning of December 2015 after he "nipped at" her four-year-old son. (Doc. No. 16 at 9). She stated that her son was on the floor next to Bruiser approximately six feet from her. She recalled her son being nice to Bruiser and talking to him, trying to get Bruiser to go into the kennel. She looked down at her phone to do something and then heard her son cry. She noticed that her son had marks on his face consistent with a bite or scratch from Bruiser and had no doubt that Bruiser was the cause of the marks on her son's face. (Doc. No. 16 at 20). She swatted at Bruiser, kenneled him, and then examined her son. McClory recalled the injury had barely broken the skin, so she decided against seeking medical attention for her son, but nevertheless felt apprehensive about keeping Bruiser and surrendered him to the Humane Society shortly after the incident.

*Second Incident*

{¶26} Samantha McIntyre testified that in December 2015 she brought Bruiser to her Henry County home on a trial basis. Bruiser had not even been there twenty-four hours when the second incident occurred. She explained that she lived in a duplex with an upstairs and downstairs apartment. McIntyre and her roommate lived in the downstairs residence. The four-year-old boy who lived upstairs asked McIntyre if he could play with her roommate's son. McIntyre let the boy wait in the downstairs residence until the roommate's son got off the bus from school. She recalled the child and Bruiser running around and playing together not long before the incident.

{¶27} McIntyre was seated on the couch while the neighbor boy and Bruiser were next to the T.V. near the couch. She had taken the boy to the kitchen to warm up a piece of pizza and the boy also had a lunchable on the living room table. She recalled holding the pizza in her hand because it was too warm for the boy to touch and then looking down for approximately thirty seconds to put a letter in an envelope when she heard the boy cry. She looked up and saw blood on his face consistent with a bite mark. McIntyre took the boy to the bathroom and examined the wound. She testified that the boy's interaction with Bruiser was not inappropriate and there was no teasing or hurting the dog during their interaction. She immediately called the boy's mother and told her roommate's boyfriend to take Bruiser back to the Humane Society.

**{¶28}** The trial court also heard testimony from the boy's mother who stated that she took the child to the emergency room after receiving the call from McIntyre and relayed that her son's injury was severe enough to require six stitches. She provided a picture of her son's injury to the Dog Warden, which was included as an exhibit at the hearing.

**{¶29}** On appeal, the Humane Society argues that the witness testimony was insufficient to establish by clear and convincing evidence that Bruiser caused injury to the two boys because the witnesses did not directly observe the injuries occur. However, given the nature of the testimony at the hearing, we believe the trier of fact could have drawn a reasonable inference from the description of the incidents by the witnesses that Bruiser was the cause of the boys' injuries.

**{¶30}** The Humane Society also claims that the evidence presented by the Dog Warden at the hearing failed to prove Bruiser acted without provocation. The record establishes that both witnesses to the incidents testified that the children were acting appropriately with Bruiser immediately prior to their injuries occurring and that no teasing or harmful conduct towards Bruiser took place. It is well-established that "[o]n the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Furthermore, we are not persuaded by the suggestion of the Humane Society that

the mere presence of food in the room during the second incident was sufficient to demonstrate provocation.

{¶31} The Humane Society also claims that the trial court should not have considered the Defiance County incident because it occurred outside the territorial bounds of the court's jurisdiction. The statute at issue, R.C. 955.222(A) specifically states, that "[t]he municipal court or county court that has territorial jurisdiction over the residence of the owner, keeper, or harborer of a dog shall conduct any hearing concerning the designation of the dog as a nuisance dog, dangerous dog, or vicious dog." It is undisputed that the Humane Society has its residence in Henry County, therefore the trial court had jurisdiction over the "dangerous dog" designation by virtue of Bruiser's owner, keeper, or harborer residing in Henry County. Moreover, the Humane Society has not provided any support for its contention that the trial court improperly considered the Defiance County incident. Nevertheless, even assuming *arguendo* that the Defiance County incident was somehow not relevant to Bruiser's designation as a "dangerous dog," the record before the trial court regarding the Henry County incident alone was sufficient to support its determination upholding the Dog Warden's "dangerous dog" designation.

{¶32} Upon review, we find Bruiser's designation as a "dangerous dog" under R.C. 955.11(A)(1)(a) to be substantiated by the evidence, and do not find any manifest miscarriage of justice. Accordingly, we conclude the trial court did not err

in affirming the Dog Warden's designation. The third assignment of error is therefore overruled.

{¶33} Based on the foregoing, the assignments of error are overruled and the judgment of the trial court is affirmed.

*Judgment Affirmed*

**PRESTON and ROGERS, J.J., concur.**

**/jlr**