[Cite as *Coykendall v. Lucas Cty. Dog Warden*, 2018-Ohio-2976.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Ashley Coykendall                                 Court of Appeals No. L-17-1253

     Appellee                                     Trial Court No. CVH-17-07575

v.

Lucas County Dog Warden                **DECISION AND JUDGMENT**

     Appellant                                    Decided: July 27, 2018

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, John A. Borell
and Elaine B. Szuch, Assistant Prosecuting Attorneys, for appellant.

* * * * *

**JENSEN, J.**

## I. Introduction

{¶ 1} Appellant, the Lucas County Dog Warden, appeals the judgment of the

Toledo Municipal Court, Small Claims Division, declaring appellant's dangerous dog

classification of appellee's service dog null and void.

## A.  Facts and Procedural Background

{¶ 2} On May 19, 2017, appellee, Ashley Coykendall, received official notice from appellant that her dog was classified as a dangerous dog.  One week later, she filed a timely appeal of the designation to the trial court.  A hearing was held on appellee's appeal on July 10, 2017.  The following facts were established at the hearing.

{¶ 3} Appellee owns a male service dog named Arkham.  Appellee lived with S.M. and B.M., the owners of a male dog named Mookie.  Appellee acquired Arkham after moving in with S.M and B.M.  Over time, Mookie became territorial and aggressive towards Arkham.  On one occasion, Mookie attacked Arkham while the two dogs were playing tug.  After the attack, both owners decided it was best to keep the dogs separated.  Typically, when both dogs occupied the same area of the house, one of the dogs would be crated to ensure there were no altercations.  Arkham had no history of violence and had never been aggressive when walking freely in the house or in public.

{¶ 4} On April 30, 2017, appellee was returning home from a shopping trip with Arkham.  Prior to appellee's arrival, E.M. placed Mookie in his crate but failed to latch the cage door.  As Arkham tried to greet E.M., Mookie escaped his crate.  E.M. testified that, as the dogs came face to face with one another, she "went to like grab Arkham, and the dogs went at each other. * * * I don't remember specific details, but Mookie grabbed on to Arkham."  E.M. claims she went after Arkham instead of her own dog because she thought Mookie would follow her verbal instructions.  E.M. testified that Arkham bit her and that Mookie did not let go of Arkham's head until after she left the room.

2.

{¶ 5} L.K. testified that when he entered the room, E.M., S.M., and J.M. were already surrounding the dogs. Mookie was locked onto Arkham's face. L.K. tried to restrain Arkham and stood over him restricting Arkham's movement with his legs. When Arkham bit E.M., he was being restrained by L.K., Mookie still had Arkham's head in his mouth, and L.M was pulling on Arkham's collar. L.K. pried Arkham's mouth opened and E.M. ripped her arm away. While L.K. restrained Arkham, J.M. had Mookie in a choke hold, trying to pull him away from Arkham. S.M. stated that Arkham's ears were being pulled during the incident. As Mookie released Arkham, he bit S.M. Both S.M. and E.M. visited the hospital. Following treatment, the health department informed appellant of Arkham's behavior.

{¶ 6} At the hearing held before a magistrate, appellant asserted that it had seen hundreds of dog bites and was well-versed at analyzing them. Appellant also claimed to be unaware of any rating scale for the severity of dog bites and was unwilling to discuss the difference between a deep bite and tearing from a person pulling away. Appellant acknowledged that jumping into a dog fight with one's hands is not the best approach, and recommended using a big stick or high-powered hose.

{¶ 7} At the conclusion of the hearing, the magistrate concluded that appellant's designation of Arkham as a dangerous animal was improper after one isolated incident in which appellant failed to show Arkham was not provoked. In making this decision, the magistrate considered the circumstances surrounding the bites, Arkham's lack of a history of violence, and the provocative actions of those who inserted themselves into the

3.

dog fight.  After the magistrate issued findings of fact and conclusions of law, the trial court adopted the magistrate's decision.  Appellant then filed the instant timely appeal.

## B.  Assignment of Error

{¶ 8} On appeal, the appellant assigns the following error for our review:

> 1) The Trial Court Erred in Granting Petitioner's Appeal Rescinding the Dangerous Dog Classification as Going Against the Manifest weight of the Evidence.

## II.  Analysis

## A.  Provocation

{¶ 9} In its sole assignment of error, appellant argues that the trial court's decision to rescind the dangerous dog designation was against the manifest weight of the evidence.

On appeal, we review the trial court's judgment under a manifest-weight standard.  *Henry Cty. Dog Warden v. Henry Cty. Humane Soc'y*, 2016-Ohio-7541, 64 N.E.3d 1076, ¶ 13 (3d Dist.).  When reviewing a claim that a judgment is against the manifest weight of the evidence, we must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the trier of fact clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.  *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).  In doing so, we must be mindful that "'the trial judge is best able to view the witnesses

and observe their demeanor, gestures and voice inflections and use these observations in weighing the credibility of the proffered testimony.'" *Henry Cty. Dog Warden* at ¶ 16, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Where evidence is susceptible of more than one construction, we must interpret it in a manner most favorable to sustaining the verdict and judgment. (Citations omitted.) *Id. Ali v. Lucas Cty. Dog Warden*, 6th Dist. No. L-16-1274, 2017-Ohio-2809, 91 N.E.3d 68, ¶ 10.

**{¶ 10}** Under R.C. 955.11(1)(a)(i), dangerous dog is defined, in relevant part, as a dog that, without provocation, "[c]aused injury, other than killing or serious injury, to any person." The term "without provocation" means "that a dog was not teased, tormented, or abused by a person, or that the dog was not coming to the aid or the defense of a person who was not engaged in illegal or criminal activity and who was not using the dog as a means of carrying out such activity." R.C. 955.11(A)(7).

The terms "teasing," "tormenting," and "abusing" are defined for purposes of R.C. 955.28(B), Ohio's dog-bite statute, and are set forth in 1 Ohio Jury Instructions 409.03, Section 5. "Teasing" means "to annoy or to trouble or worry persistently, to be troublesome or to pester." "Tormenting" is "conduct which provokes a greater annoyance and implies some torture or pain," and "[a]busing" is "mistreatment which includes some physical injury or pain to the animal." *Ali* at ¶ 12.

5.

**{¶ 11}** In his decision in this case, the magistrate concluded that appellant had not established that Arkham bit E.M. and S.M. without provocation. In coming to this conclusion, the magistrate relied on the Ninth District's decision in *Pflaum v. Summit Cty. Animal Control*, 2017-Ohio-4166, 92 N.E.3d 132 (9th Dist.).

**{¶ 12}** In *Pflaum,* the trial court found that a person intervening in a dog fight was not tormenting a dog when they pulled on his collar and hit the dog, because they had noble intentions of saving the dog that was not the aggressor. *Id.* at ¶ 10 and 17. On appeal, the Ninth District rejected this finding, holding instead that the question of whether a person tormented a dog does not necessarily pivot on whether the person acted with a malicious intent. *Id.* at ¶ 17. The court went on to highlight the lack of evidence demonstrating that the dog would have bitten the victim if she had not struck the dog and pulled on its collar. *Id.* Consequently, the court rejected the trial court's conclusion that the dog acted without provocation when it bit the victim. *Id.*

**{¶ 13}** Like the argument advanced by Animal Control in *Pflaum*, appellant contends that a dog cannot be provoked by an individual that intervenes in a dog fight unless the individual has malicious intent in doing so. This argument was rejected in *Pflaum* and is unavailing here. *See also Pulley v. Malek*, 25 Ohio St.3d 95, 95-96, 495 N.E.2d 402 (1986) ("[T]here is nothing in R.C. 955.28 which requires a defendant in a dog bite case to prove malicious intent on the part of the plaintiff in order to escape liability. * * * [J]urors could reasonably conclude that a well-intentioned neighbor did, in

6.

fact, torment a dog for the purposes of R.C. 955.28 when the neighbor picked up the injured dog after it had been struck by a car.”).

{¶ 14} Here, S.M. and E.M. were only bitten after attempting to pull Arkham away from Mookie, the aggressor, who was biting Arkham in the face at the time. Further, S.M. was pulling on Arkham's ears at the time he was bitten. It is also notable that unlike the dog in *Pflaum*, Arkham was not the aggressor. Arkham was under attack when S.M. and E.M. interjected themselves into the dog fight. Undoubtedly, S.M. and E.M.'s actions represent conduct that provoke annoyance and generate great pain, thereby meeting the definition of torment and supporting the trial court's determination that appellant failed to meet its burden of showing with clear and convincing evidence that Arkham acted without provocation.

{¶ 15} In light of appellant's failure to establish that Arkham was unprovoked when he bit S.M. and E.M., we find that the trial court's decision rejecting appellant's classification of Arkham as a dangerous dog was not against the manifest weight of evidence. Accordingly, appellant's sole assignment of error is not well-taken.

### III. Conclusion

{¶ 16} In light of the foregoing, the judgment of the Toledo Municipal Court, Small Claims Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Arlene Singer, J.                          _____
                                                          JUDGE

James D. Jensen, J.

                                          _____
Christine E. Mayle, P.J.                                JUDGE
CONCUR.

                                          _____
                                                          JUDGE


This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.