[Cite as *Wood Cty. Dog Warden v. Lathrop*, 2022-Ohio-480.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

Ashley Lathrop                                      Court of Appeals No.  WD-21-059

     Appellee                                     Trial Court No.  CVH1901424

v.

Wood County Dog Warden                    **DECISION AND JUDGMENT**

     Appellant                                    Decided:  February 18, 2022

* * * * *

James A. Grandowicz, for appellee.

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Chief Assistant Prosecuting Attorney, and
Joyce C. Nowak, Assistant Prosecuting Attorney, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Following our July 23, 2021 reversal and remand, *Lathrop v. Wood Cty. Dog Warden*, 6th Dist. Wood No. WD-20-059, 2021-Ohio-2556, this matter is before the

court on appeal of the August 12, 2021 judgment of the Perrysburg Municipal Court which again denied appellant Wood County Dog Warden's ("the warden") objections to the magistrate's decision reversing the designation of appellee Ashley Lathrop's dog as a dangerous dog. Because we find that the judgment was against the weight of the evidence, we reverse.

## I. Facts and Procedural Background

{¶ 2} The relevant facts mirror those set forth in our July 23, 2021 decision and judgment. On October 20, 2018, Paulette Eckermann was gardening in the back of her mother-in-law's property when Zeus, a German Shepherd Dog owned by abutting landowner, Ashley Lathrop, crossed the near dry creek bed dividing the properties, approached within three feet of her, and began barking and snarling. Eventually the dog left the property.

{¶ 3} After discussing the encounter with her husband and elderly mother-in-law (neither of whom had witnessed the incident), she and her husband, Thomas, decided to go to the Lathrops' house to inform them that their dog had been on the Eckermann's property and had frightened Paulette.

{¶ 4} Upon arrival, Zeus was in the driveway and immediately began barking at their pick-up truck. Mr. Eckermann did not exit the vehicle until the dog retreated. After exiting the vehicle and the approach of Mr. Lathrop and Zeus, Zeus lunged and snapped at Eckermann multiple times eventually biting him in the right leg. After the bite, he

2.

stood in the driveway and continued to speak with Mr. Lathrop. Later, Eckermann sought medical treatment for the minor puncture wound.

{¶ 5} On October 5, 2019,[1] Lathrop was served with a notice that her dog had been designated a "dangerous dog" under R.C. 955.11(A)(1)(a). The designation required Lathrop to, inter alia, secure the dog on the premises and obtain liability insurance. The notice provided that the owner could contest the designation within ten days of receipt of the notice.

{¶ 6} On October 11, 2019, Lathrop filed a letter with the Perrysburg Municipal Court contesting the designation and requesting a hearing on the matter. On January 27, 2020, Lathrop filed a motion in limine requesting that the court prevent the warden from introducing evidence of a 2008 failure to confine minor misdemeanor and any claims, other than the date of the bite incident, that Zeus was running loose off the Lathrops' property. The warden also filed a motion in limine requesting that the court exclude the testimony of disclosed plaintiff's witness, Lake Township officer Kelly Clark, questioning her credentials as an expert on provocation and whether such testimony would be considered relevant. The warden requested a hearing on the issue.

{¶ 7} The hearing was held on February 13, 2020. Prior to the start of the testimony the parties presented arguments regarding the warden's motion in limine; the

---

[1] During the proceedings, evidence was presented that the delay between the incident and the warden's designation was due, in part, to the inability to secure the Eckermann's statements.

3.

court ultimately excluded the testimony of Officer Clark. Paulette and Thomas Eckermann, the warden, and a deputy dog warden testified. Notably, the Lathrops' surveillance camera captured the bite incident and the video was viewed, testified to, and admitted into evidence.

{¶ 8} On February 19, 2020, the magistrate issued his decision vacating the warden's dangerous dog designation as to Zeus. The magistrate concluded that the warden "failed to meet its burden to demonstrate by clear and convincing evidence that the dog caused injury without provocation." The court noted that "the argument that the dog bit Mr. Eckermann because it was teased has some degree of persuasiveness." Approximately three hours later the trial court issued its judgment entry stating in full:

This matter is before the court on the Magistrate's Decision issued February 19, 2020. Upon review of the case and decision, the Court adopts the magistrate's recommendation and decision as the judgment of this court, and vacates the Wood County Dog Warden's determination that petitioner's dog is a "dangerous dog" pursuant to R.C. 955.11(A)(1)(a), et. seq.

{¶ 9} On March 4, 2020, the warden filed its objections to the magistrate's decision and a hearing was held on July 8, 2020. The warden argued that the magistrate adopted and applied an incorrect definition of provocation as it relates to the dangerous

dog statute and that, regardless, the evidence presented during the hearing clearly demonstrated that Mr. Eckermann did not provoke the subject dog.

{¶ 10} Denying the warden's objections, the court concluded that the magistrate properly limited the evidence, interpreted the evidence, and that the definition of provocation employed by the magistrate did not negatively impact the decision as asserted. The court agreed that the magistrate improperly took judicial notice of the character and nature of dogs but concluded that that the error did not impact the judgment. Specifically, as to provocation, the court noted that the warden's objection to the magistrate's interpretation of the security video and differing views on whether it demonstrated that Eckermann teased or worried the dog by making a fist, was not sufficient to say that the magistrate lost its way or improperly determined a factual issue.

{¶ 11} The warden commenced an appeal with this court arguing, inter alia, that when ruling on its objections, the trial court used a deferential, rather than a de novo, standard of review. We agreed and remanded the matter. *Lathrop*, 6th Dist. Wood No. WD-20-059, 2021-Ohio-2556.

{¶ 12} On remand the court again rejected the warden's objections. Relevantly, as to the interplay between Zeus and Eckermann, the court noted:

It appears to be the position that the video shows that Mr. Eckermann did not provoke the subject dog. This Court, having reviewed the testimony and the video is not prepared to accept that position. The

5.

Dog Warden has not met their burden to show that the actions of Mr. Eckermann did not provoke the subject dog.

{¶ 13} This appeal followed.

## II. Assignments of Error

Assignment of Error I: On remand, the trial court erred and created reversible error when it applied the wrong standard of review to its review of the magistrate's decision.

Assignment of Error II: Both the magistrate and trial court erred and created reversible error when they improperly excluded testimony under Evid.R. 404(B).

Assignment of Error III: Both the magistrate and the trial court erred and created reversible error when they improperly excluded testimony under Evid.R. 702.

Assignment of Error IV: Both the magistrate and the trial court erred and created reversible error when they found that the Wood County Dog Warden did not satisfy its burden at the dangerous dog designation hearing by sufficient evidence.

Assignment of Error V: Both the magistrate and the trial court erred and committed reversible error because their decisions went against the manifest weight of the evidence.

Assignment of Error VI: Cumulative error by both the magistrate and the trial court require reversal of the judgments in this case.

### III. Discussion

{¶ 14} The warden's fourth and fifth assignments of error, challenging the sufficiency and weight of the evidence, are dispositive and related and will be jointly addressed. Relevant here, R.C. 955.11(A)(1) defines a "dangerous dog" as follows:

(a) "Dangerous dog" means a dog that, without provocation, and subject to division (A)(1)(b) of this section, has done any of the following:

(i) Caused injury, other than killing or serious injury, to any person;

(ii) Killed another dog;

(iii) Been the subject of a third or subsequent violation of division (C) of section 955.22 of the Revised Code.

{¶ 15} Appeal of a dangerous dog designation is provided in R.C. 955.222(C):

If the owner, keeper, or harborer of the dog disagrees with the designation of the dog as a nuisance dog, dangerous dog, or vicious dog, as applicable, the owner, keeper, or harborer, not later than ten days after receiving notification of the designation, may request a hearing regarding the determination. The request for a hearing shall be in writing and shall be filed with the municipal court or county court that has territorial jurisdiction over the residence of the dog's owner, keeper, or harborer. At the hearing,

7.

the person who designated the dog as a nuisance dog, dangerous dog, or vicious dog has the burden of proving, by clear and convincing evidence, that the dog is a nuisance dog, dangerous dog, or vicious dog.

{¶ 16} As quoted above, in order to designate a dog as "dangerous" the warden must prove by clear and convincing evidence its dangerousness. "Clear and convincing evidence" is defined as that degree of proof which establishes in the mind of the trier of fact a firm conviction as to the allegations sought to be proved. *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954). This standard "'is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal.'" *Henry Cty. Dog Warden v. Henry Cty. Humane Soc.*, 2016-Ohio-7541, 64 N.E.3d 1076, ¶ 15 (3d Dist.), quoting *In re Estate of Haynes*, 25 Ohio St.3d 101, 104, 495 N.E.2d 23 (1986).

{¶ 17} Because the statute essentially calls for a de novo hearing by a municipal court or county court upon a dog owner's request, we find an appellate court's standard of review on a manifest weight challenge in the present context is the same as in a civil case. *Spangler v. Stark Cty. Dog Warden*, 2013-Ohio-4774, 999 N.E.2d 1247, ¶ 18 (5th Dist.). Thus, in determining whether a judgment is supported by the weight of the evidence a reviewing court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the trier of fact clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of

8.

justice that the judgment must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶ 18} In civil cases, as in criminal cases, the sufficiency of the evidence is quantitatively and qualitatively different from the weight of the evidence. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, paragraph two of the syllabus. "Sufficiency" is "'a term of art meaning that legal standard which is applied to determine whether * * * the evidence is legally sufficient to support the [judgment] as a matter of law.'" *Id.* at ¶ 11, quoting *Thompkins* at 386.

{¶ 19} "'Our standard of reviewing the sufficiency of the evidence in a civil case is whether, after viewing the evidence in a light most favorable to the prevailing party, the judgment is supported by competent and credible evidence.'" *Henry Cty. Dog Warden*, 2016-Ohio-7541, 64 N.E.3d 1076, at ¶ 13, quoting *Edwards v. Knox Cty. Dog Warden*, 5th Dist. Knox Nos. 14CA15, 14CA17, 2015-Ohio-1320, ¶ 9.

{¶ 20} The parties agree that Mr. Eckermann was injured by Zeus; the disputed element under the statute is whether Zeus' attack on Eckermann was provoked. Reviewing the statutory definition of provocation, this court has observed:

> The terms "teasing," "tormenting," and "abusing" are defined for
> purposes of R.C. 955.28(B), Ohio's dog-bite statute, and are set forth in 1
> Ohio Jury Instructions 409.03, Section 5. "Teasing" means "to annoy or to
> trouble or worry persistently, to be troublesome or to pester."

9.

"Tormenting" is "conduct which provokes a greater annoyance and implies some torture or pain." And "[a]busing" is "mistreatment which includes some physical injury or pain to the animal." These definitions were first recognized in *Ramsey v. King*, 14 Ohio App.3d 138, 470 N.E.2d 241 (12th Dist.1984), and have since been applied by other Ohio courts. *See Quellos v. Quellos*, 96 Ohio App.3d 31, 40, 643 N.E.2d 1173 (8th Dist.1994); *Olmstead v. Forsthoefel*, 3d Dist. Mercer No. 10-12-08, 2013-Ohio-220, 2013 WL 312369, ¶ 15.

*Ali v. Lucas Cty. Dog Warden*, 2017-Ohio-2809, 91 N.E.3d 68, ¶ 12 (6th Dist.).

{¶ 21} At the appeal hearing before the magistrate, Thomas Eckermann testified that after parking in the Lathrops' driveway he waited to exit the vehicle because Zeus was out front and barking and "not looking real friendly." Once Mr. Lathrop came out to the driveway, he exited the vehicle and began to walk around the front of the truck to speak with him. Eckermann stated his belief that Mr. Lathrop would be able to control Zeus.

{¶ 22} Eckermann then explained that when he walked toward Mr. Lathrop to speak with him, Zeus was barking and snarling. The dog then lunged toward him and he pulled his hands up in order to avoid being bitten. Eckermann stated that Zeus came at him a second time; he again pulled his hands up to avoid being bitten. Eckermann admitted that during Zeus' third bite attempt he pulled his hand back into a fist but denied

either teasing or tormenting the dog or threating the dog or Mr. Lathrop. Following the third attempt, Zeus landed a bite to his right leg. Eckermann stated that the dog was aggressive for the duration of the encounter and that he had been forced up against the front of his truck and could not get any further away.

{¶ 23} This court has carefully reviewed the video and the relevant testimony presented at trial and can only conclude that the court lost its way in finding that the warden did not provide clear and convincing evidence that the bite was unprovoked. The video begins with Zeus barking at Eckermann's vehicle, which is parked in his owner's driveway. After approximately 30 seconds of continuous barking, Zeus retreats into the garage and Eckermann exits his vehicle. Zeus' owner then appears, walking out of the garage with Zeus. The dog begins barking again and quickly runs toward Eckermann. At this point, Eckermann is standing in front of his vehicle, with both arms down at his side. Zeus runs up to Eckermann, while barking, and attempts to bite his left hand. Eckermann pulls his left hand up and away from Zeus to avoid being bitten. Zeus jumps backwards, continues barking, and then lunges toward him again. Eckermann does not move but raises his right hand in a fist—once—to deter Zeus from coming near him. Zeus retreats and continues barking while circling the immediate area for approximately five seconds. He then approaches Mr. Eckermann again and lunges toward him. At that point Eckermann raises both arms, with open palms, in an attempt to avoid Zeus. The dog's owner then steps in between Mr. Eckermann and the dog. Zeus stops barking for a

few seconds and walks behind his owner, who has begun talking with Mr. Eckermann. As soon as Zeus comes around his owner's left side, he barks once and bites Mr. Eckermann on his right leg—while Mr. Eckermann's hands were down at his side and his attention was focused on the conversation with Zeus' owner.

{¶ 24} The video clearly demonstrates that Zeus was already in a provoked state when Eckermann arrived, and the dog attempted to bite Eckermann prior to either him raising his arms or forming a fist with his hand. The dog then persisted, going around the back of its owner and biting Eckermann's right leg. Thus, the court's finding that the parties' assertions were merely a "difference of opinion" is flawed; this court is of the mindset that the evidence presented is not susceptible of more than one interpretation. There is no evidence that Eckermann "abused" or "tormented" the dog, nor is there any evidence in the video (or anywhere else in the record) to suggest that Eckermann engaged in any persistent conduct that could be considered "teasing." Eckermann raised his fist only once, and it is clear from the video that Eckermann's other body movements were nothing more than attempts to get out of the dog's way and avoid being bitten.

{¶ 25} Accordingly we find that there was insufficient evidence demonstrating that Zeus' bite was provoked and that the court's reversal of the dangerous dog designation was against the manifest weight of the evidence. Thus, the trial court abused its discretion in denying the warden's objection relative to the magistrate's determination

12.

that it was possible that the bite was provoked. The warden's third and fourth assignments of error are well-taken.

{¶ 26} Based on our determination that the court erred in reversing the dangerous dog designation we find that the warden's first, second, third, and sixth assignments of error are moot and not well-taken.

## IV. Conclusion

{¶ 27} The August 12, 2021 judgment of the Perrysburg Municipal Court is reversed. We reinstate the warden's dangerous dog designation of appellee's dog, Zeus, and remand the matter for any further proceedings necessitated by this judgment. Pursuant to App.R. 24, appellee is ordered to pay the costs of this appeal.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                    _____
                                                              JUDGE

Thomas J. Osowik, J.

Christine E. Mayle, J.                       _____
CONCUR.                                                    JUDGE

                                                     _____
                                                              JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.